WILSON v. UNION TOOL CO.

(District Court, S. D. California, S. D. June 19, 1916. On Petition for Rehearing, August 26, 1916.)

Nos. A–4 and B–62.

PATENTS ☞328—VALIDITY AND INFRINGEMENT—UNDERREAMER.

The Wilson patent, No. 827,595, for an underreamer, *held* not anticipated, valid, and infringed as to claims 9 and 19, and not infringed as to claims 2, 4, 8, 10, 11, 12, 13, 14, 15, 16, and 17.

In Equity. Two suits by Elihu C. Wilson against the Union Tool Company, consolidated. On final hearing and petition for rehearing. Decree for complainant and rehearing denied.

Raymond Ives Blakeslee, of Los Angeles, Cal., for complainant.
Frederick S. Lyon, of Los Angeles, Cal., for defendant.

CUSHMAN, District Judge. The two foregoing causes have been consolidated, and were tried and submitted at the same time as case No. 1540, this day decided. 237 Fed. 837. The consolidated cases both involve the same underreamer patent, and the general statement in the decision in No. 1540 is applicable to these causes. The Double patent involved in that suit—No. 734,833—was granted in 1903. The application for the Wilson patent, No. 827,595, in suit in these two consolidated cases, was filed in 1905, and patent granted in 1906.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Departures by the defendant from the structure, as described in the Double patent, it is complained by the complainant, infringe the patent in suit.

Cause A–4 was first begun, the alleged infringement being limited to claims 16 and 17 of the Wilson patent. Thereafter, it appearing, as alleged by the complainant, that defendant had further departed from the structure covered by the Double patent, by which he averred other claims of the patent in suit were infringed, cause B–62 was brought, on account of the latter alleged infringements. In both A–4 and B–62 novelty and infringement are denied; anticipation pleaded, and the further averment made that another than Wilson was the real inventor of the device for which Wilson received the patent. The evidence does not support the last defense, and it was not urged upon the trial.

Defendant avers an infringement on the part of complainant of the Double invention, of which defendant is the licensee. This issue has already been decided in cause No. 1540 and need not be further considered.

In pleading anticipation, the defendant in these two causes has, in so far as a number of the alleged anticipating patents and devices set up are concerned, necessarily taken a position inconsistent with its contention in cause No. 1540. This, of course, is permissible, but the court, having already held in the decision this day filed in No. 1540 that Wilson's device infringed the Double patent, and that the Double patent was not anticipated by the prior patents mentioned, it follows that, in so far as the alleged anticipating patents and devices preceded the Double invention in point of time, necessarily, none of them anticipated the Wilson invention. In so far as the patents issued and devices designed and used prior to the Wilson application for patent, and not shown to be prior to the Double invention, are concerned, no anticipation is found.

The O'Donnell & Willard patent, No. 762,435, and the so-called "Jones' Round-Nosed" reamer—a device never patented—have already been considered in cause No. 1540, this day decided. No further discussion of them is required. The Jones' so-called "Removable Bowl" reamer is the device, outside of the Double invention, chiefly relied upon in argument, by the defendant, to show anticipation of the patent in suit. It will be considered in connection with cause B–62.

Claims 16 and 17 of the patent in suit in A–4 are as follows:

"16. An underreamer cutter having two shoulders and a bearing face on the inner side of each of the two shoulders of the cutter.

"17. An underreamer cutter having a shank and a shoulder on either side of the shank of the cutter, each of said shoulders projecting at right angles to the shank of the cutter and having a bearing-face on its inner side."

These claims are to cover the structure of an article of manufacture of a particular form—that is, the cutters—and not for a machine or combination. Many of the claims made by Wilson were repeatedly rejected by the Patent Office on reference to Double's patents. The two foregoing claims were so rejected, upon which rejection Wilson's patent attorney wrote the Commissioner of Patents the following letter under date of May 12, 1906:

"It is noted that the leader from the character $4^3$ in Fig. 9 of the drawings is too long. Please remove the end thereof, so that the leader will terminate at the right of a vertical drawn from the right edge of the shank $4'$. Please add the character $4^3$ to the left of Fig. 9 and connect the same by a leader to indicate on the left of the view the bearing corresponding to the one indicated by the character $4^3$ at the right of the view. In Fig. 4 apply the character $4^3$ in at least two places above and below the view, and connect said character by a leader to indicate the bearings at the edges of the cutters $4$."

The effect of this amendment to the drawings was to make plain that the inner bearings on the face of the cutters were out nearest its lateral face—entirely beyond the perpendicular side of the shanks. In this particular the letter concludes:

"It is believed that, in view of the application of the additional characters to Figs. 9 and 4, the examiner will be able to pass claims 16 and 17. The Double cutter has its bearing face entirely across the cutter, instead of on the inner side of the shoulders at the sides of the shank, as specified in these claims."

Upon this representation, the rejected claims 16 and 17 were allowed. By this action, and upon familiar principles of estoppel, the claims were clearly limited and restricted to a cutter with its inner bearings confined to its sides, and not extending across its face. In all of defendant's alleged infringing devices, the bearings extend all the way across the cutter.

In an underreamer made by defendant—referred to in the evidence as Type F—and more particularly on account of which complainant brought the second suit, B–62, the lower end of the body extension, instead of being integral, has a block interposed between the lower ends, extending downward on either side of the central slot. With this interposed block in position, the inner bearings on the cutter extend entirely across its face. With this block left out, the body extension becomes more nearly of a pronged or forked formation.

Complainant contends that the use of the interposed block is only a pretense; that, although furnished as a part of the machine, it is detrimental, and not intended to be used. Complainant relies upon the Weed Chain Case, 196 Fed. 213. The question so presented is one that can only be considered in connection with combination claims, and is irrelevant upon consideration of these claims upon a feature of the cutter as an article of manufacture.

No infringement of claims 16 and 17 is shown. Therefore decree will be for defendant in A–4.

### Cause No. B–62.

The claims of the patent alleged to be infringed in cause B–62 are numbered 2, 4, 8, 9, 10, 11, 12, 13, 14, 15, and 19. While included in the bill, upon the trial the contention that claims 10 and 15 were infringed was withdrawn. Although it was later contended that claim 10 was infringed, yet effect will be given to such withdrawal, and those claims are held not infringed.

Claims 2, 4, 12, 13, and 14 are all structural claims, rather than combination claims. Prongs on the lower end of the reamer body,

237 F.—54

forming a fork, and each prong terminating in a lug, are, in substance, made features in each one of these latter claims.

The Double invention contracted, to a great extent, the unappropriated field open to invention at the time of the Wilson application, and materially narrowed the range of equivalents to which those claiming under the Wilson patent are entitled. The particulars in which the Wilson device infringes the Double invention have already been pointed out in the decision this day filed in No. 1540. This marks the particulars in which the Wilson device was anticipated by the Double patent.

As already pointed out, while the Double reamer, Type F, has a reamer body the lower end of which, before the reamer is completely assembled, may be said to form a fork, yet, when assembled by a block interposed at the bottom and held immovable at all times while the reamer is in operation, the form of extension covered by the Double invention is restored. The specifications and drawings in the Double patent, No. 734,833, only indicated an integral formation in this respect, and such, the evidence shows, was the construction under it until after the granting of Wilson's patent; but the Double claims are not limited to such integral construction.

The main purpose of the forked formation, and the function to which it contributed, was, on the collapse of the cutters, to allow the cutter shank to swing in between the forks, instead of the cutters swinging entirely over the lower end of the reamer body. In this respect none of the devices made by the defendant encroach in any way upon the patent in suit. As already stated, complainant contends that defendant, in interposing the removable end block, has resorted to a subterfuge; that it is a mere pretense of adhering to the operative form of structure covered by the Double patent; that it is not intended that the block remain in the machine in operation; that it is altogether a detriment to leave it in position while the machine is in use. There was testimony by a salesman that, on one occasion, he had seen one of defendant's reamers of Type F being used without an end block. There is no testimony one way or another why, in this particular operation, the block had been left out.

In Weed Chain Tire Grip Co. v. Cleveland Chain & Mfg. Co. (C. C.) 196 Fed. 213, the court found that a very palpable subterfuge was made use of to colorably avoid infringement. In Parsons Non-Skid Co. v. Atlas Chain Co., 198 Fed. 399, 117 C. C. A. 286, involving the same patent in question in the Weed Chain Case, although not the same parties, the court found that the "natural, usual, and preferential" use of the defendant's device would infringe. There is no such conclusive state of facts in the present case. There is much testimony concerning this matter, but from the fact that, with the block left out, there would be but a slight inner bearing afforded the head of the cutter, I am convinced that it was not intended that the block should be discarded when the machine was in use, nor would such course likely be followed usually.

As respects the forked formation, permitting the reamer to be assembled from the bottom rather than from the top, as in Double's

original invention, and in so far as the claimed added advantage of being able to re-machine more effectively the pronged structure of the Wilson device than the hollow slotted extension of the Double structure are concerned, these are not, directly, matters affecting in any way the mode of operation of the machine and do not show invention, nor more than mere mechanical ability. As to these claims, defendant does not infringe.

The remaining claims, Nos. 8, 9, 11, and 19, are combination claims, and are as follows:

"8. A hollow underreamer body terminating in prongs forming a fork, said prongs having shoulders on their inner faces to form ways, cutters in said ways, means for operating the cutters, and a detachable cross-piece connecting the ends of the fork.

"9. An underreamer body terminating in prongs forming a fork, and provided with shoulders on the inner faces of the prongs which form cutter ways and terminate in downwardly projecting lugs, and cutters mounted between the prongs of said fork and having shoulders inside the fork and faces to bear on the projecting lugs."

"11. An underreamer body, terminating in prongs forming a fork, having beveled faces at the ends of its prongs, cutters having shoulders to ride over said beveled faces, and means for suspending said cutters in said body."

"19. An underreamer comprising a body terminating in two prongs, and cutters each having two shoulders and a bearing face on the inner side of each of the two shoulders to engage said prongs."

The essence of claim 8 is the "detachable cross-piece connecting the ends of the fork." What has already been said is applicable to this claim. When this claim was first presented to the Patent Office, it was rejected on reference to Double's inventions; the Commissioner reciting that Double's patent, No. 796,197, showed "a cross-piece at the end of the forks." After such rejection, upon further petition on behalf of the patentee, in which it was urged upon the Commissioner that Double's No. 748,054 did not show a fork, the claim was allowed.

Unless it was intended to restrict this claim to that feature of the fork allowing the collapse of the cutters, it would appear reasonably certain that a misunderstanding was created and a mistake made in the Patent Office in this patent, as its ruling that Double's patent, 796,197, showed "a cross-piece at the end of the fork," never was answered by the patentee. In Double's patent No. 796,197, Figures 2 and 3 show an end block and the specifications recite:

"This end block 10 is secured on the ends of the walls $8^3$ by a pin or key 22."

The walls $8^3$ referred to form a fork at the lower end of the extension, and the block 10 is held between these forks by the key 22, substantially in the same manner as in Type F claimed to infringe the patent in suit. To make an integral construction of separate elements, or to make separate elements into an integral construction only for convenience in assembling, where it does not affect the method of operation, does not show invention. In any event, with the detachable bolt between the prongs in Wilson's device, the cutters are permitted to collapse between the prongs. With the detachable block between the prongs in Type F of Double, the cutters collapse over the

lower end of the reamer body extension, without passing between the prongs in any way, so that, in any event, as long as the defendant has confined itself to the original outline of its structure, there is no infringement of this claim.

The so-called "Jones Removable Bowl" reamer, defendant also contends, is an anticipation of the patent in suit. Only a very few machines of this design were made. These machines were manufactured and sold after the time of patenting Double's device, and more than two years before the application of Wilson for the patent in suit. In the Jones removable bowl reamer, the extension is forked to form bearings, but the inclosing removable bowl, which takes the place of the inclosing recesses or pockets of the Double and Wilson—in which the cutter shanks are seated—is unbroken by any slotting, as occurs in the Double and Wilson, to allow the shoulders on the same to contact with the foot of the casing, to cause the collapse of the cutters.

This removable bowl reamer anticipated the forking of the lower extension of the patent in suit in so far as permitting the rod integral with thread or tee thereon—which carries the cutters—to be inserted from the bottom is concerned. These forks in the removable bowl reamer also form ways for the cutters; but the forks in this reamer were not joined at the bottom in any way. The shanks of the cutters bore at all times against the prongs and did not collapse between them. The bearing at the end of the prongs afforded the inner face of the cutter head in the removable bowl reamer does not anticipate the bearing afforded by the "lug" face of the patent in suit, for, in the removable bowl reamer, the bearing afforded is considerably less across than the diameter of the extension of the reamer body or bowl.

In the Double invention and conception, there was nothing in the nature of a lug or the lugs $2'$ of the Wilson patent. In claim 11 these lugs are not mentioned, and, in so far as the action described of the cutter shoulder riding over the beveled face of the prongs is concerned, there is neither an additional function nor advantage given to what was already present in the Double conception. Claim 11 is therefore not infringed.

Passing to claims 9 and 19, it has already been found that, as ways for the cutter to slide or ride on, the faces of the prongs and lugs were no more than equivalents of the ways found in the Double invention; but, in so far as these prongs or lug faces afford bearings for the cutter when in reaming position is concerned, a different question is presented, and this is the feature covered by claims 9 and 19.

In the machine of the Double patent and original design, the slotted web of the lower extension helped to form a pocket for the cutter and furnish the inthrust and outthrust bearing for the cutter shanks and extended to the very bottom of the reamer body. This, necessarily, resulted in two things: An inner bearing for the cutter head, narrow as compared with the diameter of the extension upon the reamer body, and weakened to some extent by the slots therein. In the patent in suit, the lower portion of the outer web is cut away, giving the cutter less lateral and greater inthrust bearings. The lugs on either side are thereby created. The outer faces of these lugs form

bearings for the inner shoulders on the cutters. This formation enables the maker—because of the removal of the side web—to give the cutters a wider inner face and inner bearings at the outer side of the inner face of the cutter.

The bearings on the "lug" thus afforded, being in the direction of the extension of the inclosing web, necessarily, make a stronger formation than the bearing confined, as in the original Double design, to the slotted intersecting cross web. The broader cutter head and broader bearing furnished by the device of the patent in suit, obviously, tend to lessen any tendency of the cutters to twist in operating, and there is testimony in the cause, which I am inclined to credit, that, with the narrower Double cutter, the work of the reamer is more likely to result, under certain recurring conditions, in what is termed "keyholing"; that is, in the cutters which are hung opposite to each other each getting started to cut downward in the same place, and not reaming uniformly all around the hole.

In the so-called "Double Improved" underreamer, and in Type F, with the interposed block in position, a lug at the lower end of the reamer body appears, and, with the block removed in Type F, two lugs appear, in relatively the same position and with relatively the same bearing faces as those upon the lugs of the patent in suit. In so far as these bearings in defendant's "Double Improved" and Type F extend upon the faces of the lug or lugs beyond the sides of the diameter of the pocket in which the cutter is mounted, they are mechanical equivalents of the bearing on the outer face of the lugs in the patent in suit, and the same is true of the widened portion of the inner face of the cutter, adapted to bear upon such portion of the face of the lug. It matters not that, in the device shown in evidence, the cutter head extends but a little distance upon this bearing, for to that extent defendant has appropriated what does not belong to it, and therefore infringes.

Upon the argument, it was contended by defendant that the only novelty and patentable feature of the patent in suit was the pronged formation, which permitted the collapse of the cutters between the prongs. If cutting away the interposed web in the Double device to allow the cutters to collapse more completely was patentable, on the same principle, cutting away the side web to give the cutters yet a greater bearing was also patentable, and, if appropriated, infringement results.

In the earlier Double devices there were secondary dovetails adjacent to the junction of the cutter head and shanks, with corresponding ways in the inner faces of the extension, forming the recess in which the cutter is mounted on the body. These added ways caused an outward flare at the mouth of the recess, or pocket. As these ways were made deeper and the flare increased, a wider bearing would be given, and opportunity for a wider faced cutter to bear upon it; but, when defendant departed from this form of construction, and entirely sheared away the side web of the extension to form a lug, the bearing faces to accommodate the wider cutter head, he appropriated the invention and conception of Wilson, and particularly of the patent in

suit. The fact that defendant did not appropriate the perhaps relatively more important conception of Wilson, whereby the cutter shanks were allowed to collapse between the prongs, does not excuse it, or take from the infringement it has practiced, for the seat or bearing of the cutter head on these. faces, or lugs, is not dependent upon the swing in collapse of the cutter shanks between the prongs. 30 Cyc. 977, note 15.

Therefore it is held that the machine of the defendant infringes claims 9 and 19 of the patent in suit. Decree for injunctive relief will be granted.

### On Petition for Rehearing.

Prior to the order consolidating A–4 and B–62, much was said by complainant's counsel in the proceedings in A–4 to support the contention now made by defendant upon its petition for a rehearing; but it must be borne in mind that such statements were made with a view to securing, after the taking of complainant's opening proof, or the greater part of it, a stipulation from defendant's counsel to waive complainant's election (which had been announced early in the taking of such proof) to stand—in A–4—upon claims 16 and 17 of the patent, and to discontinue the suit upon the other claims of the patent. The stipulation was not made. B–62 was begun and consolidated with A–4.

All that is said by complainant's counsel, after the commencement of B–62, and especially after the consolidation—upon which statements defendant relies—does not warrant the narrowing in any way of the issues' tendered by the allegations of the bill in B–62. Especially is this true in view of the notice given by complainant's counsel after such consolidation and before defendant began taking testimony. This notice was as follows:

"Complainant gives notice to the defendant at this time that alternative to any disposition which may be made of equity suit No. B–62, consolidated by the order of the court with equity suit No. A–4, and thus constituting at present the suit known as equity suit No. A–4 consolidated, in which these proceedings are being conducted, namely, any disposition which may be made of said equity suit No. B–62 at the final hearing of this case with respect to such consolidation of said two cases, complainant at such final hearing will rely upon claims Nos. 2, 4, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, and 19 of the Wilson patent in suit herein. This notice of alternative attitude or position is given at this time in order that defendant may be apprised in the premises before commencing the taking of its proofs."

That which was said by counsel for complainant after the commencement of B–62 is more reasonably explained by giving effect to the following considerations:

The main purpose in bringing B–62 was, doubtless, to determine the question of the infringement, by Type F, of several claims of the patent withdrawn from consideration in A–4, by the election therein made by complainant to rely entirely on claims Nos. 16 and 17. Further, such statements were rather made as statements of what had been done and said theretofore in A–4 than as announcements of what it was proposed to do in B–62.

Nothing short of a clear, unequivocal election to withdraw or discontinue the suit as to alleged infringements set out in B–62 would suffice to narrow the issues thereby tendered. The discontinuance in A–4 as to other claims—which was worked upon the election to stand upon claims 16 and 17—did not have the effect of a judgment upon the merits, or any other than that of a voluntary nonsuit.

It is not necessary to determine the effect which such election would have had if A–4 had gone to final judgment before B–62 was begun and the consolidation with A–4 ordered. Counsel for complainant, having withdrawn, by the election, part of his claim for infringement, had a right to withdraw such election, and the rights of the defendant growing out of the election, and the proceedings subsequent to such election and prior to notice of its withdrawal, would give no ground for denying complainant's ultimate right to again broaden the issues. The only effect of such election and the proceedings had thereafter, and prior to notice of its withdrawal, or amendment of election, would be to give the defendant, under certain circumstances, a right to the imposition of terms, and the right to demand an opportunity to further cross-examine complainant's witnesses theretofore testifying. The defendant, having made no demand for such opportunity, must be held to have waived the same, and, in consideration of the scope of the cross-examination, the court feels that it was in no way prejudiced thereby.

It is probable, if any of the witnesses already examined—whose testimony was relevant to the broadened issues—had died, the testimony of such witnesses would have to be stricken, or the first suit abandoned and a new one brought. But the court is not called upon to decide such a question. In so far as any question of splitting his cause of action is concerned, that matter was foreclosed by Judge Bledsoe's order denying the motion to dismiss B–62.

Counsel for defendant has again urged upon the court consideration of the merits. The forked formation of complainant's reamer body was essential to the complete collapse of the cutters; but it was not essential to the coaction in the particular in which infringement is found. The fact that, in describing, in the claims, a member of a machine which performs two functions in such a way as to disclose a feature of its fitness to perform one function, which feature is not essential to the discharge of its other function, does not warrant competitors in dropping such feature and thereby appropriate one-half of the invention and its advantage, nor prevent the court from according the patentee such a range of equivalents as will fairly protect him in the substantial merits of his invention. If so, form becomes everything, and substance nothing.

Rehearing denied.