WILSON & WILLARD MFG. CO. v. UNION TOOL CO. et al.

(Circuit Court of Appeals, Ninth Circuit.   February 11, 1918.   Rehearing Denied May 13, 1918.)

No. 2996.

1. PATENTS ☞328—VALIDITY AND INFRINGEMENT—UNDERREAMER.

The Double patent, No. 734,833, for an underreamer, is for a combination of old elements, must be limited to the device shown and described, and is not entitled to a broad range of equivalents. As so construed, *held* not infringed.

2. PATENTS ☞246—INFRINGEMENT—COMBINATION OF OLD ELEMENTS.

While a combination of elements, all of which are old in the art, may be invention, the combination must be considered as a unitary structure; and, if a defendant omits one or more of the material elements, he does not infringe.

3. PATENTS ☞241—INFRINGEMENT—MECHANICAL STRUCTURES—"EQUIVALENT."

To make one mechanical device the "equivalent" of another, so as to establish infringement, it must appear, not only that it produces the same effect, but that such effect is produced substantially by the same mode of operation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Equivalent.]

4. PATENTS ☞165—RULES OF CONSTRUCTION.

A patent is no broader than its claims; and, if the language of the claims is clear and distinct, the patentee is bound thereby.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Edward E. Cushman, Judge.

Suit in equity by the Union Tool Company, Edward Double, Rosa Eichenhofer, as administratrix of the estate of Frederick Eichenhofer, deceased, and George Chadderdon, against the Wilson & Willard Manufacturing Company. Decree for complainants, and defendant appeals. Reversed.

For opinion below, see 237 Fed. 837.

Raymond Ives Blakeslee, of Los Angeles, Cal., for appellant.

Frederick S. Lyon, of Los Angeles, Cal., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. On appeal by the Wilson & Willard Manufacturing Company from a decree in favor of the Union Tool Company finding the Double patent No. 734,833, issued in 1903, valid and infringed as to claims 1, 2, 6, 7, and 8. Injunction and accounting were ordered. Wilson v. Union Tool Co. (D. C.) 237 Fed. 837. As will be seen by an examination of Union Tool Company v. E. C. Wilson, 249 Fed. 736, —— C. C. A. ——, No. 2918, decided this day, the patent has to do with an underreamer for drilling oil wells.

[1] The District Court found that the Double underreamer took the lead in oil well tool trading over all former underreamers. and in deciding the case treated the main question involved as pertaining to what range of equivalents complainant was entitled to under the patent in suit, and held that the Double underreamer constituted combinations of decided merit, which entitled complainants to a fair range of equivalents. The claims involved are as follows:

(1) "An underreamer comprising a hollow mandrel furnished with an internal shoulder, a downward extension having opposite parallel bearing faces having a keyway therein, shoulders at the sides of such extension, and upwardly and inwardly sloping dovetail slipways beneath said shoulders; a spring on the shoulder in the hollow mandrel; a rod playing in the mandrel, furnished with a key seat and supported by the spring; dovetail tilt slips playing in the slipways and furnished with key seats, respectively; a key in the key seats of the slips and rod, and playing in the keyway of such extension, to hold the slips against the shoulders; said slips being furnished with inward projections to slide upon the downward extension of the mandrel to spread apart the cutting edges of the slips when the slips are drawn up."

(2) "An underreamer furnished with a mandrel having a downward extension provided with opposite parallel bearing faces and a keyway in the extension; a spring-supported rod furnished with a key seat and playing up and down in the mandrel; tilt slips slidingly connected with the mandrel and furnished with inward projections to slide upon the opposite bearing faces of the downward extension to spread the slips apart at the lower ends when the slips are drawn up; and a key carried by the rod and carrying the slips."

(6) "In an underreamer, a mandrel furnished with a hollow slotted extension, the lower end of which slopes upward at the edges; tilt slips slidingly connected with the mandrel and furnished on their inner faces with projections, the upper faces of which slope downward to slide upon the extension of the mandrel; and means connecting the slips with the rod."

(7) "In an underreamer, the combination with a hollow mandrel, provided with a slotted extension, a spring-actuated slip-operating rod provided with

a pivot key, tilt slips provided with key seats adapted to be engaged by said pivot key, said key seats being somewhat larger than the key to allow the slips to tilt, said slips provided with inwardly projecting shoulders, and said slotted extension provided with surfaces adapted to tilt said slips and hold the same in expanded position."

(8) "In an underreamer, the combination of a hollow mandrel with a hollow slotted extension, said extension having opposite parallel bearing faces, a slip-carrying rod in said mandrel, slips connected to said rod, said slips having projections which bear against said extension, said slips being provided with key seats, a key carried by said rod, each end of the key lying in a key seat of a slip, and the key seat in each slip being somewhat larger than the key to allow the slips to partake of a tilting action."

The finding of the District Court was that "the chief novel feature of the Double invention was the tilting means adapted for the collapsion and expansion of the cutters in combination with interrelated dovetails on the cutters and ways of the body extension," and that there was no anticipation. The errors assigned are based on these several contentions: That the Wilson underreamer does not include the fundamental elements of the Double underreamer, namely, the "hollow slotted extension" with opposite parallel bearing faces with upwardly and inwardly inclined dovetailed ways; that the Double underreamer was but a transitory step in the art; that the Double underreamer was, in effect, abandoned by the predecessors of the appellee because of the success of the Wilson underreamer; that Double, the patentee of the patent in suit, was not the original and independent inventor of the combination claimed in the patent in suit; that the finding of the court that the essence of the Double invention was the open dovetailed slipways with dovetail cutters, coacting therewith, and means for expanding the cutters and to cause them to tilt on the suspension means, was error.

[2] It is clear that all of the elements of the Double combination patent, No. 734,833, were old in the art. This being true, the claims of invention in the patent should be limited to the specific combinations of elements as covered in the claims of the patent. Combination of elements which are old in the art undoubtedly may be invention, but the combination must be considered as an entirety or unitary structure. If defendant omits one or more of the material elements which make up the combination, he no longer uses the combination; and it is no answer to say that the omitted elements are not essential, and that the combination operates as well without as with them. Leeds & Catlin v. Victor Talking Machine Co., 213 U. S. 301, 29 Sup. Ct. 495, 53 L. Ed. 805; Evans et al. v. Hall Printing Press Co., 223 Fed. 539, 139 C. C. A. 129. It must also be established by one who alleges infringement of a combination that the entire combination, as a unitary structure and having substantially the same mode of operation, is present in the alleged infringing machine. Owens v. Twin City Separator Co., 168 Fed. 259, 93 C. C. A. 561.

[3] To make one mechanical device the equivalent of another, it must appear, not only that it produces the same effect, but that such effect is produced by substantially the same mode of operation. Has the Union Tool Company, appellee, shown that the underreamer de-

vice involved is a combination of the same elements as the Wilson device, and that their mode of operation is substantially the same? Western Engineering Co. v. Risdon Iron & Locomotive Works, 174 Fed. 224, 98 C. C. A. 132. In the Double combination there is a hollow mandrel with inner shoulder, a downward extension with a shoulder at the side of the extension, a spring on the shoulder in the hollow mandrel, a rod playing in the mandrel supported by a spring, and a key at the lower end of the rod to carry the cutters. All of these elements were old in the art; but it is to be reiterated the court found that the chief novel feature of the invention was the tilting means adapted for the collapsion and expansion of the cutters, in combining that tilting means with interrelated dovetails on the cutters and ways of the body extension. The court also found that none of the underreamers of the prior art combined cutters "tilting over the lower end of the reamer body with shanks having dovetails so interrelated with dovetail ways upon the body of the reamer as to afford inner, outer, and lateral bearings when in the reaming position."

In the Double reamer we find the hollow mandrel, the mandrel having a longitudinal hole for the reception of the spring and rod. The hole has a lateral shoulder upon which the spring is seated; the lower end of the mandrel has a downward extension which is hollow or drilled for the reception of the spring-actuated rod and for the reception of the key, upon which slips are hung, and there are opposite parallel bearing faces upon which the inward projections of the slips rest when in reaming position. The bottom of the downward extension has rounded faces with shoulders. At the side of the downward extension there are dovetails sloping upwardly and inwardly beneath the shoulders and joint member, which subdivides the mandrel and confines the rod and its spring.

In the Wilson underreamer we find a hollow mandrel having a longitudinally drilled hole for the reception of the spring-actuated rod, but there is no internal shoulder upon which the spring seat rests. The spring seats there move upon a removable key or block. Wilson et al. v. Bole & Double et al., 227 Fed. 607, 142 C. C. A. 239. The seating of the spring upon the removable key, instead of upon a fixed shoulder in the mandrel, appears to be novel; but in the Double device the key performs the service of connecting the slips with the spring-actuated rod. In the Wilson mandrel we find the bottom has two prongs, terminating in lugs, which spread the cutters apart into reaming position and hold them so spread, and as described in Union Tool Company v. Wilson, supra, above the lugs there are parallel shoulders in dovetails which form ways for the shoulders on the cutter shanks. The devices operate upon different principles and under different modes of operation. The mandrel of the Wilson has no internal shoulder, no downward extension with its hollow, no slot, no opposite parallel bearing faces, and no rounded or beveled lower edge; nor has it shoulders at the side of the downward extension, nor dovetails sloping upwardly and inwardly beneath the shoulders, nor what

is called the "sub" or extra joint in the body of the underreamer. The hollow or longitudinal hole in the Wilson mandrel, the hole being for the reception of the spring and rod, and the shoulders inside of the prongs for the reception of the cutter shanks being parallel, do not permit a sliding action of the shanks of the cutters upon the suspension means to permit tilting, but merely allow the lower ends to swing toward each other, a pendulum swing, pivoting on the point of suspension, the integral cross at the bottom of the spring-actuated rod.

This mode of operation is new with Wilson, and is covered by his patent, No. 827,595. In the Double reamer the slot is not only a key guide, but its lower walls act as a stop for the key, or the downward travel of the rod, key, and cutters. The Wilson device has no such part, with any such functions, in the open spring between the prongs of the body. In the Wilson reamer No. 2, the removable key in the body serves the double function of supporting the spring at its lower end and acting as a stop to arrest the downward travel of the rod by engaging with the upper wall of the elongated slot in the rod. The means used in this rod-affecting function are quite different in the Wilson reamer from those employed in the Double reamer, and we do not understand that the Wilson pronged type of underreamer can be held the equivalent of the hollow slotted extension type of the Double reamer body. It is significant that the slot features of the Double extension, with its two functions, is lacking in the Wilson reamer.

Proceeding, we find that the tilt slips in the Double reamer, connected with the mandrel and with dovetails, play in the slipways on the mandrel, with key seats larger than the key, with inward projections which slide upon the downward extension of the mandrel, and with the upper faces of these inward projections sloping downward. In the Wilson cutters there are not inward projections which slide upon the downward extensions of the mandrel, nor are there the upper faces of the inward projections sloping downwards. In fact, the Double cutter does not contain shanks; whereas, the Wilson cutter has a cutter head and a long shank. The design of the cutter in the Wilson device, co-operating with the special design of the mandrel, allows the cutter heads to bear solidly against the prongs when in reaming position, but, when collapsed, the cutter head is below the prongs and the shanks are in between the prongs. This interrelationship between the Wilson pronged mandrel and the Wilson cutter with its shank and head and bearing on the projecting shoulders of this head enables an operation whereby the portion of the mandrel which serves to spread the cutters and hold them apart in reaming position is not between the cutters when the cutters are in collapsed position. The description of such construction is that the cutters can be given a very great strength, inasmuch as no material has to be removed from them to make room for the spreading device when the cutters are collapsed.

In the Double underreamer the rod plays in the mandrel, is supported by a spring, contains a key seat, in which is a key which plays in

the slot or keyway in the downward extension. and the key has a notch to permit the rod to engage it and thus to prevent displacement. Wilson shows a rod or stem with a cross or T which as a single member plays in the mandrel, is supported by the spring, and draws the cutters upward into reaming position. But there is no key seat nor key playing in the slot or keyway of the downward extension of the mandrel. A slot cut in the rod or stem of the Wilson reamer appears to allow room for a vertical play of the rod or stem; but the seats for this key are in the mandrel, and not in the rod, and the key is a part of the mandrel not belonging to the rod or stem. Comparison of the elements of patents shows in the Double device the downward extension, the slot in the downward, and the inward projections in the slips; none of these elements appears in the Wilson reamer. On the other hand, Wilson shows certain novel elements not contained in the Double underreamer. The tilting action of the cutters of the Double device, due to the presence of the spreading member or downward extension between the cutters at the time of collapsion, is not to be had in the Wilson reamer, for, as already indicated, there is no part of the mandrel between the cutters at the time of collapsion, upon which there could be a tilting.

It is contended that the tilting action of the Double cutters is not old in the art, in that the Double underreamer shows shoulders removed high up on the slips close to the key, which acts as a fulcrum, and that the location of the shoulders causes the sudden collapse of the cutters. But an examination of the claims of the Double reamer fails to show the inclusion of that feature in the patent; moreover, the quick collapse of the cutters in the Double reamer is due to the fact that they do not collapse during the downward movement, when they are sliding upon the opposite parallel bearing faces of the downward extension, except that slight collapse enabled by the outward travel of the upper ends of the cutters on the key. But, when the inward projections of the slips pass off of these opposite parallel bearing faces, then we have the collapse of the cutters. The record shows that this operation causes what is called "plunging," and which is obviated in the Wilson underreamer, because of the fact that the cutters there collapse from the beginning of the downward movement.

[4] Inasmuch as the invention of Double was not broad and primary in its character, we believe that the doctrine of equivalents is not broadly applicable (Paper Bag Patent Case, 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122), and that, therefore, the inclined bearing faces on the prongs of the Wilson device are not the equivalent of the opposite parallel bearing faces on the downward extension of the Double underreamer. It is thoroughly well established that the patentee is limited to his claims, and the patent is no broader than the claims, and, if the language of claims of the patent is clear and distinct, the patentee is bound by the language he has employed. Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344. Claim No. 1 of the patent involved does not describe any means of

producing the tilting action, and none of the other claims herein involved covers both the interrelated dovetails and the tilting means found by the court to be the essence of the invention of Double. There is no doubt of the success of the Wilson device, for the record shows that it met with immediate sale and great favor. The Double underreamer should be held to have been a step in the art, carried forward by Wilson's invention.

In conclusion, we hold that in the device designed by Wilson—the fork or pronged type of underreamer mandrel and the cutters and body with shanks to co-operate with lugs and ways on the mandrel, so as to allow having the spreading prongs or forks between the cutters when in reaming position, and with the hollow spreading device between them, when in collapsed position, with the cutters collapsed upon these prongs, instead of tilting or spreading—Wilson has invented, and that his device is distinct from the Double invention.

With respect to the contention of the appellee that the Double underreamer was the first successful device, we need only say that the record contains much evidence to the effect that there were other types of successful underreamers, namely, the Swan, Austrian, Plotts, Kellerman, O'Donnell & Willard, and others. None of them was wholly successful, but they were used until the Double underreamer came in and was more successful than any of its predecessors had been. But the Double underreamer was also not wholly satisfactory, because of the frequent breaks of the cutters, and it dropped behind after Wilson invented.

It must be held that the Double patent should be strictly construed, and the patentee, having limited himself to the elements of his combination, is limited in the construction of his claim to the devices shown. Oriental Tissue Co. v. Louis De Jonge & Co. (D. C.) 235 Fed. 296. The importance of this point is emphasized by the record, which shows that Double canceled his claim No. 8 and substituted claim No. 7, limited his specification, and amended his claims to provide for opposite parallel bearing faces upon his hollow slotted extension. He thus eliminated from his claim those things which were excluded by surrender of scope and of definition of his claimed combination. Wright v. Yuengling, 155 U. S. 47, 15 Sup. Ct. 1, 39 L. Ed. 64; Roemer v. Peddie, 132 U. S. 313, 10 Sup. Ct. 98, 33 L. Ed. 382; Greene v. Buckley, 135 Fed. 520, 68 C. C. A. 70.

What is called the Jones round-nosed reamer, which was introduced in evidence as one of the earlier forms of reamer, appears to have had dovetail cutters operating in open dovetail slipways, the cutter extending the periphery of the body to contact with the casing above the spreading bearings and above the fulcrum point; and the evidence shows that Double saw the Jones round-nosed reamer before he made the reamer of the patent in suit. It was also the opinion of the District Court that the tilting action of the cutters, as disclosed in the Brown patent, No. 687,296, was the same as that used by Double, excepting that the cutters were not actuated by the downward motion of the suspension means.

Appellant contends that the District Court erred in its view that the cutters in the Brown reamer patent were not actuated by the downward motion of the suspension means, and that the cutters do travel downwardly as the suspension means travels downwardly, and are positively actuated by such suspension means. We find it difficult to reach a satisfactory opinion upon this point, but it looks as though there was a tilting of the cutters in the Brown reamer substantially like the tilting in the Double reamer.

The decree of the District Court must be reversed, and the cause remanded, with directions to dismiss the complaint and to dissolve the injunction.