UNION TOOL CO. v. WILSON.

(Circuit Court of Appeals, Ninth Circuit. February 11, 1918. Rehearing Denied May 13, 1918.)

No. 2918.

1. PATENTS ⬙328—VALIDITY AND INFRINGEMENT—UNDERREAMER.
    The Wilson patent, No. 827,595, for an underreamer, *held* not anticipated and valid, and claims 9 and 19 infringed.

2. PATENTS ⬙238—INFRINGEMENT—OMISSION OF PARTS.
    That an alleged infringer does not use all the features of the patented device does not negative infringement.

3. PATENTS ⬙314—SUITS FOR INFRINGEMENT—CONSOLIDATION.
    Under equity rules 19 (198 Fed. xxiii, 115 C. C. A. xxiii) and 26 (201 Fed. v, 118 C. C. A. v), a District Court has power to consolidate for trial patent causes which involve the same patent, where the parties are the same, although it effected a broadening out of the charge of infringement over a prior election in the record.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Edward E. Cushman, Judge.

Suit in equity by Elihu C. Wilson against the Union Tool Company. Decree for complainant, and defendant appeals. Affirmed.

For opinion below, see 237 Fed. 847.

Frederick S. Lyon, of Los Angeles, Cal., for appellant.

Raymond Ives Blakeslee, of Los Angeles, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Appeal from an interlocutory decree in favor of Wilson, appellee, plaintiff, against the appellant, Union Tool Company, defendant, holding that Wilson patent No. 827,595, for an underreamer, patented July 31, 1906, was valid particularly as to claims 2, 4, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, and 19, and was infringed as to

⬙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

claims 9 and 19 by the manufacture and sale or lease of the so-called "Double Improved and Type F" underreamers of a kind introduced as exhibits. Accounting was also decreed. The defendant denied infringement, and pleaded prior invention and want of novelty. The case was heard in the lower court in conjunction with Wilson & Willard Manufacturing Co. v. Union Tool Co., Edward Double et al., 249 Fed. 729, ——- C. C. A. ——-, decided contemporaneously with the present case, wherein interlocutory decree was made in favor of the Union Tool Company, finding the Double patent, No. 734,833, for underreamers, valid and infringed as to claims 1, 2, 6, 7, and 8 thereof, and providing for accounting and costs. The parties to the two suits are not identically the same, but the suits pertain apparently to the same interests, as one of the plaintiffs in the last referred to suit is the defendant in the present appeal, and the defendant in 2996, the Wilson & Willard Manufacturing Company, is the same company as in this case, 2918. The same general interests have been found to use the invention of the other interests, with its own, in the making of its underreamer product. The two suits were instituted under letters patent for underreamers for enlarging oil well holes to allow the lowering of the casing. The Double underreamer patent, 734,833, was issued in 1903, and, as stated, the Wilson patent in suit was issued in 1906. In both suits prior patent art was relied upon as a defense, and in both cases it was found that neither patent was anticipated; that is, that the underreamers made by the defendant in the one case infringe the Double patent, and the underreamers manufactured in the other case infringe the Wilson patent.

[1] Claims 9 and 19, found infringed, are as follows:

(9) "An underreamer body terminating in prongs forming a fork and provided with shoulders on the inner faces of the prongs which form cutter ways and terminate in downwardly projecting lugs, and cutters mounted between the prongs of said fork and having shoulders inside the fork and faces to bear on the projecting lugs."

(19) "An underreamer comprising a body terminating in two prongs, and cutters each having two shoulders and a bearing face on the inner side of each of the two shoulders to engage said prongs."

The contention of the appellee is that claims 9 and 19 use the term "prongs" to designate the portions of the body which are provided with other working features, such as shoulders on their inner faces and the downwardly projecting lugs at their lower ends; that the term "prongs" is used as defining the bifurcated structure at the lower end of the body, which, under the Wilson patent, permits the cutters to collapse closely together, approaching each other between such prongs and likewise permits assembling at the bottom of the reamer and remachining. It is not contended by the appellee that this close collapsing operation of the cutters is found in the underreamers of the Union Tool Company, which are said to infringe; but it is insisted that the interrelation and other construction pertinent to the provision of shoulders on the inner faces of the prongs and downwardly projecting lugs at their lower ends, with both of which the

249 F.—47

cutters co-operate, have been adopted by the appellant as also have been the assembling and remachining advantages. To this, therefore, we will confine our consideration.

Wilson, in his underreamer, shows a hollow elongated body provided at its lower ends with the projections or prongs forming a fork and terminating at their lower ends in downwardly projecting lugs; such prongs having shoulders on their inner faces to form ways for cutters. The cutter shanks have bearing shoulders which engage inside of the ways, the cutters also having expansion bearing faces on lateral shoulders, which expansion faces coact with the spreading bearings on the lugs which hold the cutters apart. The lugs terminate at their lower ends in beveled end faces over which ride bearings, in which the expansion bearing faces terminate at their upper ends, thus causing the cutters in the main to be expanded and permitting them in the main to be collapsed, although the spreading bearings are slightly upwardly and outwardly inclined to terminate the expanding action and initiate the collapsing action by coaction with the expansion bearing faces. The cutters are pivotally connected with a spring-actuated rod or stem at a T-head or cross at the lower end thereof; the connection being by means of recesses or pockets in the inner faces of the cutters. These pockets are formed in the cutter shanks. The spring-actuated rod or stem is received within the hollow body of the underreamer, and adapted to move endwise therein; the spring which actuates such rod or stem being confined between a nut threaded onto the upper end of such rod, and a holding device shown in the patent to consist of a block which forms a seat for the spring at its lower end, and through a hole or bore in which the rod or stem may play, such block being held in place in the hollow body by dowel pins or the like. Down-thrust bearings on the body between the prongs co-operate with the upper ends of the shanks of the cutters, and other down-thrust bearings are in the nature of shoulders on the forks at the lower ends of the shoulders on the prongs, and which co-operate with the cutters at the zone of the bearings. In-thrust upon the cutters in action is taken by the spreading bearings to which it is imparted by the expansion bearing faces, and out-thrust of the cutters is taken by the shoulders of the ways on the prongs which co-operate with the bearing shoulders on the cutter shanks. The cutters are provided with certain shoulders on their outer faces, which coact with the casing or shoe, causing the cutter to be collapsed when the underreamer is to be elevated and withdrawn through the casing. A detachable crosspiece or safety bolt is provided between the lugs at the lower ends of the prongs, which to a certain extent braces the prongs and also prevents the cutters and the T or cross from dropping into the hole and being lost, in case the rod or stem should break, and similarly prevents dropping of either cutter in the hole in case a fracture should occur through the cross or T. This detachable crosspiece is held in place in two bolt holes in the lugs, within one of which fits a nut into which one end of the bolt is screwed by a suitable implement. For convenience the illustrations may be referred to.

E. C. WILSON UNDERREAMER.

DEFENDANT'S EXHIBIT DOUBLE PATENT NO. 1.

E. DOUBLE UNDERREAMER.

In use the cutters are drawn down against the expansive action of the spring, the rod or stem and the cutters moving together, and the expansion bearing faces moving over the spreading bearings until the bearings ride over the beveled end faces, permitting the cutters more closely to approach each other, or swing together, in which action they may be accommodated between the prongs, so that the cutters may be entered into the well casing. The underreamer is lowered through the casing with the cutters so collapsed, and the cutters are retained in such positions of collapsion due to their confinement within the casing. But, when the cutters emerge from the lower end of the casing or the shoe thereon, they are permitted to expand, the expansion bearing faces riding up over the spreading bearings until the upper ends of the shanks of the cutters come against the down-thrust bearings of the cutter, and, if the parts are so specifically formed, the bodies of the cutters at their sides are brought up against the down-thrust bearings. The reaming of the hole is necessary in order to cut away the annular shoulder or wall in the hole which remains beneath the casing after a certain period of drilling operation has ensued; this annular shoulder remaining because the drilling bit has an outside diameter less than the inner diameter of the casing. The underreamer is brought into position to remove the shoulder, and its cutters are expanded in the space immediately above the shoulder and beneath the shoe of the casing, which is elevated to make clearance between it and the shoulder for the cutters. The cutters being in expanded positions, the underreamer is reciprocated in the hole, or raised and permitted to drop alternately by means of a drilling line which is attached to the walking beam in the derrick at the mouth of the hole. The cutters attack the formation of the shoulder, and chip it or break it away, and reduce it to chippings which are mixed with water within the hole by a circulating system to produce a mud which is led away from the mouth of the hole by a bailer. When the underreaming operation has gone on to a point practically coincident with the bottom of the drilled hole and the casing has been lowered correspondingly, the underreamer is put into condition for withdrawing from the hole by elevating it until the shoulders come into engagement with the lower end of the shoe on the casing, which pinches the cutters inwardly and causes the expansion bearing faces to ride downwardly over the spreading bearings until the bearings are brought into engagement with the beveled end faces upon the lugs, over which latter they ride until the cutters assume the collapsed positions. The body of the underreamer travels upwardly, while the cutters remain relatively stationary, and when the cutters have assumed the collapsed positions they enter the casing or the shoe, and being confined by such casing, and so held in collapsed condition, the entire underreamer is elevated and withdrawn from the casing at the mouth of the hole.

Appellee urges that an important feature of the underreamer is the possibility of assembling the underreamer or cutters, the spring-actuated rod and its spring, and the body, at the lower end of the underreamer, without employing a middle joint in the body or a cap

or joint at the upper end thereof, and contends that this advantage flows from the combination of parts and features provided by Wilson and which was not possible before Wilson invented. It is pointed out that the Double patent, No. 3, although showing a construction and interrelation of features whereby the cutters and spring-actuated rod and its spring may be removed at the lower end of the body, nevertheless, part of the body has to come away with these parts.

We now turn to the evidence of infringement of the claims referred to. The bodies in type F of the Double underreamer and in the Wilson underreamer are surmounted by a square and suitable threaded joint for the attachment of a string of tools. In both reamers the main bodies are single pieces, and in the bore of such reamers is placed a spring for flexibly supporting the underreamer cutters. At the lower end of the bore are fork-mouthed extensions which have on their inner faces grooves or dovetail ways for the retention of the cutters, these co-operating with the dovetails on the shanks of the cutters. At the lower end of the prongs are bearing faces which bear against the inner faces of the cutters on the body of the cutters, and in the Double reamer this bearing extends somewhat up on the shank of the cutter. On the lower end of the prongs are holes to receive a bolt, which bolt is threaded into one of the prongs after passing through the hole in the other. In the Double reamer type F the bolt is arranged to support a loose or movable block which does not exist in the Wilson reamer. This block forms an extension of the bearing faces on the lower ends of the prongs, which bearing faces coact with the cutters when in expanded position. There are, on the lower ends of the prongs in both the Double and Wilson underreamers, upwardly and outwardly inclined bearing faces, with angles of outward inclination of the lowermost bearing faces on the prongs of the Double reamer; the angles being the same in both devices. The effect of the angle is to regulate the pressure of the cutter against the walls of the casing when passing into and out of the well. The cutters in both devices consist of a body surmounted by a shank with the dovetails on the shank, a shoe notch on the outer edge of the shank, and suitable tapered bearing faces at the lower end of the shank, which bearing faces are intended to ride against the casings when the cutters are collapsed, and a tapered inclined portion just above the shoe notch. The body of the cutters consists of a curved exterior portion meeting with two parallel lateral faces. The inside portion of the body is cut out or relieved of the upper curved portion, below which is a straight portion or plane surface at right angles to the lateral planes of the cutter body. Above this in both reamers is a plane face, which forms bearing faces on the outward extensions or shoulders of the body of the cutters beyond the shank. The upper end of the shank of the cutter shown in the Wilson patent is a slot against which bears the prong or extension called the T-bar of the underreamer. In the Double reamer the cutter has, near the upper end of the shank, a square lug projecting inwardly with a shoulder which bears against a projection on the lower end of the T-bar or cross. In both reamers there are,

at the upper end of the T-bar, suitable threads for the reception of the nut, also holes for a cotterpin, and cotterpin for supporting the upper end of the spring.

In the Wilson patent the lower end of the spring is supported upon a block, which in turn is supported by pins which rest against the holes in the body. In the Double reamer (type F) the lower end of the spring bears against a key, the lower edge of the key resting against holes or slots in the sides of the underreamer body, the key having suitable downward projections for retaining the same in the body and passing through an enlarged slot in the T-bar. In the Wilson patent the block consists of a cylindrical piece with suitable reception notches at the sides of the pins. The lower portions of the block extend down and form a thrust bearing between the upper ends of the cutter shanks. In the Double reamer there are shoulders on the inside of the prongs, which form a bearing at the upper end of the shank of the cutter to prevent inward displacement of the shanks, but the main portion of this is supported by the pressure of the lug at the inward and upward end of the cutter shank against the lower end of the T-bar. The dovetail ways on the cutters of the Wilson patent engage in the body with shoulders, which are parallel to the axis of the underreamer body. In the Double reamer (type F) the shoulders on the shank of the cutter bear against upwardly and inwardly inclined dovetailed ways on the insides of the prongs of the underreamer body. In the Wilson patent the bearing faces at the lower ends of the prongs on the underreamer are inclined upwardly and outwardly, while in the Double reamer the faces are parallel. In the Double patent on the face of the cutter at the lower end of the shank, where the same joins the body of the cutter, and outside of the dovetailed ways on the shank, are auxiliary dovetail ways which extend upwardly for a distance of approximately one inch in the exhibit produced. These dovetailed ways do not appear on the cutters of the Wilson patent drawings. On the back of the shank of the cutter or inside of the same is a notch, with a short downwardly and inwardly inclined plane at its lower edge, and its upward edge is an inwardly inclined plane, which is cut in the back of this cutter for the purpose of preventing the collapsing over the inserted block, which rests on the bottom bolt and also upon the slight inward shoulders on the lower ends of the prongs. In the Wilson patent no such notching appears.

The testimony shows that the block which is held in place by the detachable bottom bolt in the type F reamer is for the purpose of forming an extension of the bearing faces at the lower ends of the prongs in the underreamer body; but the underreamer would be as operative without the block as with it. This being true, it would appear as though the object of providing the block was to distinguish the underreamer type F from the Wilson underreamer by an attempt to make the bearing surfaces on the lower ends of the prongs of the underreamer continuous, whereas in the Wilson underreamer they are separate and distinct. The block can be put in position, but the evidence is that, if the lower end of the underreamer body is worn

by use, it would probably be difficult to extract the block from the lower end of the reamer, and when extracted that it would be difficult to replace it where it belonged.

Another point emphasized in the evidence was that in type F reamer there is no such hollow slotted extension as had been shown in certain other underreamers made by the Union Tool Company. In the type F there is a horizontal hole through the block. The evidence is that probably the lowest limit of the spring-actuated rod would butt against the block; such action being like that which occurred in the old hollow slotted extension reamers by the key butting against the lower end of the slots in the hollow slotted extension. It appears that there was a loosely mounted key passing through the spring-actuated rod of what was called the Double improved reamer and cutters. But the key in type F reamer, held in holes or openings in the body and passing through a slot in the spring-actuated rod, was to be found in the Wilson underreamer, manufactured by the Wilson & Willard Manufacturing Company after the spring of 1911.

Letters patent have been issued for an underreamer disclosing and claiming a key similar to the one referred to in combination with the other parts and features. Wilson et. al. v. Double & Bole, 227 Fed. 607, 142 C. C. A. 239. The evidence discloses that when the detachable block is in place, and held in place by the bottom bolt in the type F reamer, the tendency is to assist the action caused by the shoulders on the lower ends of the prongs on the underreamer in expanding and collapsing of the cutters. The key, when in place, supports the lower end of the spring when the parts in the reamer are all in working position, and limits the downward movement of the spring-actuated rod by the contact of the upper edge of the slot in the spring-actuated rod coming in contact with the upper edge of the key. The real purpose of the block and bottom bolt is to prevent loss of parts out of the underreamer body in case the spring-actuated rod or key are broken, but the block in itself forms an extension of the bearing face of the lower ends of the prongs or forks at the lower end of the body.

Without extending the statement of the evidence, it is sufficient to say that a reading of it satisfies us that there are various decided advantages incident to co-operation and coaction of the several parts and features, in the expanding and collapsion of the cutters, the imparting of in-thrust and up-thrust and out-thrust, the prevention of rotatory action, prevention of what is called "keyholing," and achieving of a more effective and extended cutting zone and cutter action, and gaining of more stock in the cutters to utilize. It is quite apparent from the evidence that the conception of Wilson has resulted in a reamer with end cutters, disposed for operation at the lower end of the body, in which there are the advantages of a proper expanding and collapsing, and better provision for in-thrust with the parts capable of being assembled in an open mouth in the bottom and in which the lower end of the reamer could be remachined, and in which the solid T could be used. To accomplish these many desired

and formerly unattained features and characteristics, Wilson has invented by an operative and efficient combination, and we believe that infringement as to claims 9 and 19 has been well shown. The old idea prior to Wilson was to expand entirely by inwardly directed shoulders or surfaces entirely under or within the bodies or shanks of the cutters, and to Wilson is due the conception of provision of lateral shoulders and co-operating lateral surfaces upon the body for expansion and collapsion, in-thrust and prevention of rotatory action. In certain prior reamers, for example, defendant's patent No. 3, there were what are called "spaced stub projections" for supporting part of the underreamer body, and in defendant's exhibit Jones Removable Bowl Reamer there are spaced ways for cutters, surrounded by a bowl with which the cutters have to co-operate in expanding and collapsing. But Wilson has invented, so that nothing is required except prongs and cutters and up-thrust on the body in all of the underreamer expanding, collapsing, and working actions and strain resistances. He did away with the bolt, and no part of the body has to be removed for assembling the cutters and other features, and has done away with the necessity for assembling of parts at the lower end of the body, and other features as shown in the Double patent No. 3. The Double patent No. 3 shows a pin fixed in place and impossible of removing, but in the Wilson invention no joint had to be removed, and no stationary wall or hollow slotted extension had to be disturbed in the ready disassembling of the parts for removing the cutters. None of the prior reamers were capable of being remachined at the lower end without cutting away the spring-holding shoulder. But in the type F there appears to have been the use of such advantageous features.

We think the lower court was correct in its comments upon the plea of anticipation. The view taken was that, in the companion case it being held that the Wilson device infringed the Double patent, and that the Double patent was not anticipated by the prior patents referred to in that hearing, it followed that, in so far as the alleged anticipatory patents preceded the Double invention in time, none of them anticipated the Wilson invention, and with respect to the patents issued and the devices designed and used prior to the Wilson application for patent, and not shown to be prior to the Double invention, no anticipation was had. The District Court pointed out the essential differences of the so-called Jones removable bowl reamer, and held that the forks in the bowl reamer, while forming ways for the cutters, were not joined at the bottom in any way, and that the shanks of the cutters at all times bore against the prongs and did not collapse between them, and that the bearing at the end of the prongs, affording the inner face of the cutter, had in the removable bowl reamer, did not anticipate the bearings afforded by the lug face of the Wilson patent. The combination of parts in the bowl reamer was not the same, nor was the action the same, nor did the Jones, nor did what is called the O'Donnell & Willard underreamer (patent No. 762,435), have shoulder prongs with ways and cutters with shoulders

on the ways. In fact, what is spoken of as the "bowl mouth" in the Jones reamer could not be taken away without rendering the reamer inoperative.

[2] We believe that the Double patent No. 1 does not suggest the pronged formation, to permit close collapsion of the cutters assembled at the bottom of the reamer, or as carrying bodies for a lug element or cutter ways; nor do we find in Double patent No. 2 anticipation of the Wilson invention. There are, in this patent, supplemental lugs or dovetails on the cutter entering pockets or grooves, said to hold the slips and prevent them from spreading outwardly; but these are put-thrust bearings forming ways, and the lugs become supplemental dovetails or shoulders on the cutters added to the shoulders in the Double patent No. 1. The fact that the appellant has not used each attribute of the Wilson invention cannot excuse it from being held to infringement. The Paper Bag Case, 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122; Stebler v. Riverside Heights Association, 205 Fed. 735, 124 C. C. A. 29; Parker v. Automatic Machine Co. (D. C.) 227 Fed. 451; Jackson Fence Co. v. Peerless Fence Co., 228 Fed. 691, 143 C. C. A. 213; Walker on Patents, § 350.

[3] Appellant makes much of the action of the court in consolidating the causes heard in the District Court, and of the action of the court in the consolidated cause as to the several types of reamers belonging to the appellant; but we find no error on the part of the court in its rulings and procedure. Under equity rules 19 (198 Fed. xxiii, 115 C. C. A. xxiii) and 26 (201 Fed. v, 118 C. C. A. v) the court was authorized to make the orders that it did; the appellant had its day in court, and presented its full defense. Inasmuch as the subjects of claims 9 and 19 are found in each of the defendant's improved reamers, including types D, E, and F, performing the same functions in substantially the same way, to produce the same results and obtain the same benefits, the appellee is entitled to a decree against the appellant.

The order, therefore, will be that the decree of the District Court is affirmed.