## WILSON v. UNION TOOL CO.

(Circuit Court of Appeals, Ninth Circuit. May 17, 1920. Rehearing Denied August 2, 1920.)

### No. 3397.

1. **Contempt ☞66(1)—Jurisdiction on error from criminal and civil contempt judgment can be retained after reversal of criminal aspect.**

   Where a judgment for contempt was of both civil and criminal nature, the latter dominated, so that the proper remedy for review was writ of error, not appeal, and jurisdiction on writ of error to review the civil aspect of the judgment does not cease with reversal of the criminal aspect, in view of Act Sept. 6, 1916, § 4 (Comp. St. § 1649a), requiring the court to disregard mistake in the form of appellate procedure.

2. **Patents ☞259, 326(2)—Sale of parts intended to be used in infringing combination is contributory infringement and violation of injunction.**

   One who sells parts of machines intended to be used in an infringing combination is guilty of contributory infringement, and cannot purge himself of contempt for violating the injunction against infringement by the claim that the users of the patented machines were entitled to make or procure repair parts therefor.

3. **Patents ☞326(2)—Sale of extra parts not justified as sale for repairs, so as to avoid contempt.**

   A plea, in contempt proceedings for violation of an injunction against infringement, that the parts manufactured and sold were repair parts, is not sustained by stipulation that they were extra, spare, and repair parts, for the right of the user of a patent device to repair it does not entitle him to obtain duplicates, or spare parts, or extras, in anticipation of breakage or destruction.

4. **Patents ☞326(4)—Stipulated facts held to show violation of injunction by sale of extra parts.**

   Where an injunction against infringement restrained a sale of parts intended to be used as part of an infringing device, a stipulation of the facts, stating that defendant offered for sale and sold extra spare and repair parts and elements to be used with the infringing machine, shows violation of the injunction.

5. **Patents ☞327—Recovery for infringement by sale to dealers does not release device from infringement.**

   The rule that an accounting of profits and damages resulting from infringement releases the infringing device in the hands of the users does not apply, where the sales for which the damages were recovered were to dealers, so that the damages would not include a patentee's right to profits arising from resale by the dealers.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Benjamin F. Bledsoe, Judge.

Suit by Elihu C. Wilson against the Union Tool Company. In contempt proceedings, charging violation of the injunction previously issued against infringement of a patent, the defendant was purged of contempt by the sale of parts of the infringing machine, and plaintiff brings error. Reversed and remanded.

G. Benton Wilson, of Los Angeles, Cal., for plaintiff in error.

Thos. O. Toland, A. V. Andrews, and Frederick S. Lyon, all of Los Angeles, Cal., for defendant in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVER-TON, District Judge.

HUNT, Circuit Judge. Upon an appeal from an interlocutory decree, holding that Wilson patent No. 827,595, for an underreamer, was valid as to certain claims, and was infringed as to claims 9 and 19, and awarding an accounting, this court affirmed the decree of the District Court. A full history of the case is given in Union Tool Co. v. Wilson, 249 Fed. 736, 161 C. C. A. 646. Thereafter, in contempt proceedings instituted in the District Court, the Union Tool Company was held to have violated the injunction issued in Union Tool Company v. Wilson, supra, by having manufactured, offered for sale, and sold two types of underreamers, neither of which was substantially or even colorably different from the respective devices described in the injunctive order of the court, the manufacture, sale, and use of which underreamers were inhibited, and that the Tool Company, since the issuance and service of the injunction, had offered for sale and sold extra, spare, and repair parts and elements for and to be used with its device, sold prior to the issuance and service of the injunction.

The court, however, purged the corporation of contempt in the matter of sales of repair parts, but made the order without prejudice to the right of Wilson to renew his application. The company was fined $5,000, out of which sum, when paid, the clerk of the court was authorized to pay over to the complainant (Wilson) $2,500 as a reasonable portion of the expenses incurred by the complainant in the contempt proceeding, and the court ordered that if, upon execution, the fine was not paid, the president of the Tool Company, Double, should stand committed to jail and be confined until the fine was paid.

Writ and cross-writ of error were sued out, and upon the writ brought by the Union Tool Company and Double, to review the judgment of conviction, this court reversed the clearly punitive portion of the decree of the District Court, but affirmed that portion which imposed a fine and directed that the fine imposed should be paid to the complainant to cover his costs. Union Tool Co. et al. v. United States et al., 262 Fed. 431, —— C. C. A. ——. By the cross-writ now before us we are to review that portion of the judgment of the District Court wherein the Tool Company was purged of contempt.

[1] The Tool Company, however, first questions our jurisdiction, and contends that appeal, not writ of error, is the proper remedy. Inasmuch as the contempt proceeding had two aspects, criminal and civil, the criminal dominated, and in seeking review the Tool Company properly sued out writ of error. Matter of Christensen Engineering Co., 194 U. S. 458, 24 Sup. Ct. 729, 48 L. Ed. 1072. But as both the punitive and remedial phases were before the District Court, and both were considered, both may be reviewed upon writ of error. Proudfit L. L. Co. v. Kalamazoo L. L. Co., 230 Fed. 120, 144 C. C. A. 418; Kreplik v. Couch Patents Co., 190 Fed. 565, 111 C. C. A. 381. It would be strange if, merely because there was a reversal of the criminal aspect of the judgment, the party in whose favor the

remedial order was affirmed should now be denied relief, and thus be obliged to proceed anew by another procedure. Such a ruling would be out of accord with section 4 of the act to amend the Judicial Code, approved September 6, 1916 (39 Stat. 726 [Comp. St. § 1649a]), which provides that—

"No court having power to review a judgment or decree rendered or passed by another shall dismiss a writ of error solely because an appeal should have been taken, or dismiss an appeal solely because a writ of error should have been sued out, but when such mistake or error occurs it shall disregard the same and take the action which would be appropriate if the proper appellate procedure had been followed."

We therefore deny the motion to dismiss.

Upon the merits: The position of Wilson is that the District Court erred in the order purging of contempt, because in the trial upon the contempt proceeding it was stipulated that, before and since the service of the injunction already referred to, the Tool Company not only had manufactured and sold, and intended to continue to manufacture and sell, the double pocket type of underreamer and the double type U underreamer, together with extra, spare, and repair parts therefor, but also had manufactured and sold, and intended to continue to manufacture and sell, cutters, springs, rods, cotter pins, and all parts except bodies, as extra or repair parts for and to be used with the underreamers, particularly referred to and described in the interlocutory decree and injunction which had been issued in the case, and which were sold by the defendant to dealers and users prior to the service of the injunction. By the writ of injunction the Tool Company and its officers and agents were enjoined from—

"manufacturing, using, leasing, selling, or causing to be sold in any manner, underreamers like or embodying the construction or interrelation or formation of parts of complainant's double reamer and extras or type D (in exhibit) or a reamer, type E, or a reamer type F, and from manufacturing, selling, using, or leasing any part or parts or elements calculated and intended to be combined or used as a part of or feature of any underreamer or device in infringement of letters patent No. 827,595, being the letters patent sued on in this case, that is, claims 9 and 19 thereof, in any manner whatever, or from manufacturing or causing to be manufactured, using or causing to be used, selling or leasing or causing to be sold or leased, either directly or indirectly any combination of parts or elements or features capable of being assembled together or used in infringement of said letters patent No. 827,595, that is, of claims 9 and 19 thereof."

It is plain that in the light of the finding, and considering the injunction order of the District Court, the only legal conclusion to be reached is that there was a deliberate violation and a contempt, and that it was error to purge of such contempt, unless there is merit in the contention that the order of the District Court was not a positive injunction against the manufacture of all parts of elements of the device, but only as against the manufacture or use or sale of—

"any part or parts or elements calculated and intended to be combined or used as a part of or feature of any underreamer or device in infringement of said letters patent No. 827,595; that is, of claims 9 and 19 thereof."

[2] The theory advanced is that the Wilson patent is for a combination; that the infringement adjudged was the manufacture and sale by defendant of complete underreamers embodying the combination of the respective claims 9 and 19 of the patent; that the infringement was of the underreamer as an entirety—that is, a combination; that the unconditional sale of a patented machine carries with it a right to the purchaser, or his successors in interest, to maintain such machine in operative condition; that the purchaser has the right himself to make all repairs necessary to keep the machine in operation, and may make new parts, and therefore, it having been adjudged that the cutters or bits do not infringe claims 16 or 17 of the patent, that supplying substitute cutters is not supplying the combination, but is repairing the combination; that is, the repair of a licensed combination underreamer.

The rule of contributory infringement, however, does not uphold the contention. In Thomson Houston v. Ohio Co., 80 Fed. 712, 26 C. C. A. 107, it was held by the Court of Appeals that it was settled that, where one makes and sells one element of a combination covered by a patent, with the intention and for the purpose of bringing about its use in such combination, he is guilty of contributory infringement, and is equally liable to the patentee with him who in fact organizes the complete combination. Judge Taft, for the court, said:

"Many of the most valuable patents are combinations of nonpatentable elements, and the only effective mode of preventing infringement is by suits against those who, by furnishing the parts which distinguish the combination, made it possible for others to assemble and use the combination, and who, by advertisement of the sale of such parts and otherwise, intentionally solicit and promote such invasions of the patentee's rights."

[3] The plea that the parts manufactured and sold to dealers and users were for repair only is not altogether substantial, inasmuch as the stipulation of facts in the record and the finding of the lower court show that the Tool Company had offered for sale and sold "extra, spare, and repair parts and elements" for and to be used with the infringing underreamers. The principle that a right of the user of a patented device extends to repairs of the device does not go to the extent of replacing parts, such as obtaining duplicates or spare parts and extras in anticipation of breakage or destruction. National Casting Co. v. American Steel Foundries (C. C.) 182 Fed. 626; Slocomb & Co. v. Layman Co. (D. C.) 227 Fed. 94. The fact that the purchaser of extra, spare, and repair parts may have no body portion of the underreamer does not necessarily affect the question where the infringer has sold all parts required to reconstruct the combination, where the purchasers have underreamer bodies of the infringed type. Wilson v. Simpson, 9 How. 109, 13 L. Ed. 66; Morrin v. White Works (C. C.) 138 Fed. 68.

[4] But further discussion of possible distinctions between repairs and construction becomes unnecessary in view of the terms of the injunction and identification of the devices made in the decree and the admissions of the Tool Company that the extra, spare, and repair parts were intended for use with such devices. Leeds & Catlin v. Vic-

tor Talking Machine Co., 213 U. S. 325, 29 Sup. Ct. 503, 53 L. Ed. 816.

[5] It is argued that, when Wilson secured a decree granting accounting of profits and damages resulting from the infringement, thereby the infringing devices were released in the hands of the users, and that for Wilson to seek profits and damages for the past infringements and also to seek injunction against further manufacture of the extra, spare, and repair parts and elements, is to ask two remedies for one wrong. The error of this position, as we view it, is that it conflicts with the rule that the infringing devices are not free in the hands of the users until the patentee, whose rights have been transgressed, has received full satisfaction for the transgression. Sherman-Clay v. Searchlight Horn Co., 225 Fed. 497, 140 C. C. A. 539; Stebler v. Riverside Heights Orange Growers' Association, 214 Fed. 550, 131 C. C. A. 96, L. R. A. 1915F, 1101. In the Stebler Case, decided by this court, the patentee and the manufacturing infringer sold directly to users only, and all profits and damages became involved in the suit; whereas, in the case under consideration the patentee, Wilson, and the manufacturing infringer, the Tool Company, sell to dealers and resellers, and whatever profit retailers may make may not always be recovered in the accounting to be had. Should such a result follow, Wilson may proceed against the resellers or user for retailer's profit.

Under the findings by the District Court, we believe that the only conclusion is that there was a willful disobedience of the injunction, and that it was an abuse of discretion on the part of the court to purge the defendant in error of contempt. The judgment is therefore reversed, and the cause is remanded to the District Court, with directions to impose such punishment as may seem proper.

Reversed and remanded.