CUMMINGS v. WILSON & WILLARD MFG. CO. et al.*

(Circuit Court of Appeals, Ninth Circuit. January 26, 1925.)

No. 4278.

1. Patents ⬤═289—Rule as to right of parties seeking affirmative relief to assert other party's laches held inapplicable in suit for infringement of patent.

Rule that, where each party seeks affirmative relief against the other in reference to the same transaction, neither may assert the other's guilt of laches, held inapplicable in suit for infringement of patent, since the same transaction was not involved.

2. Patents ⬤═289—Patentee held guilty of laches, barring recovery for alleged infringement.

Patentee's inactivity for 16 years after issuance of patent held laches, barring suit for alleged infringement, not excused by alleged financial inability to sue sooner.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Oscar A. Trippet, Judge.

Suit by Alexander Cummings against the Wilson & Willard Manufacturing Company and E. C. Wilson. From a decree for defendants, plaintiff appeals. Affirmed.

Leonard S. Lyon and B. A. Cummings, both of Los Angeles, Cal., for appellant.

G. Benton Wilson and Hamer H. Jamieson, both of Los Angeles, Cal., for appellees.

Before ROSS, HUNT, and RUDKIN, Circuit Judges.

ROSS, Circuit Judge. The appellant brought this suit in the court below for the alleged infringement of a patent issued to him May 1, 1906, for a certain invention pertaining to underreamers then in use in oil drilling; his application therefor having been filed in the Patent Office February 25, 1905. His bill also alleged that the appellee E. C. Wilson subsequently and wrongfully on July 31, 1906, procured an interfering patent covering the same invention, under which the appellee Wilson & Willard Manufacturing Company claims. The bill also alleged that the appellees infringed the appellant's patent by manufacturing and selling underreamers embodying his invention within six years prior to the filing of the bill.

Various defenses upon the merits were set up by the defendants, in addition to which they pleaded, and according to the record proved, laches on the part of the appellant, which latter defense was sustained by the court below, and the suit dismissed on that ground. The record shows that the appellant well knew, during all of the more than 16 years, that the appellees were carrying on operations under their patent, resulting in numerous suits, where the validity of their patent was sustained, and where they successfully maintained suits against infringers thereof. Union Tool Co. v. Wilson & Willard Mfg. Co. (D. C.) 237 F. 837; Wilson & Willard Mfg. Co. v. Union Tool Co. 249 F. 729, 161 C. C. A. 639; Union Tool Co. v. Wilson & Willard Mfg. Co., 248 U. S. 559, 39 S. Ct. 6, 63 L. Ed. 421; Wilson v. Union Tool Co. (D. C.) 237 F. 847; Union Tool Co. v. Wilson, 249 F. 736, 161 C. C. A. 646; Union Tool Co. v. Elihu C. Wilson, 248 U. S. 559, 39 S. Ct. 6, 63 L. Ed. 421; Union Tool Co. v. United States ( C. C. A.) 262 F. 431; Wilson v. Union Tool Co. (C. C. A.) 265 F. 669; Union Tool Co. v. Elihu C. Wilson, 259 U. S. 107, 42 S. Ct. 427, 66 L. Ed. 848.

In the present case, although the appellant's patent was issued May 1, 1906, he did

*Rehearing denied February 25, 1925. Certiorari denied 45 S. Ct. 637, 69 L. Ed. ——.

not commence this suit until August 21, 1922, more than 16 years thereafter. Apart from the rule of law relied upon by him, next to be mentioned, the sole excuse now made in his behalf is that he was financially unable to sue sooner.

[1] The rule of law so relied upon is thus stated in 21 C. J. 216: "Where both parties were equally at fault, neither can assert laches as against the other; and where each of the parties seeks affirmative relief against the other in reference to the same transaction, neither may assert that the other was guilty of laches." Respecting that point we think it sufficient to say that the dispute between the parties to the present suit did not in any wise involve the same transaction.

[2] The appellant, in support of his contention that the court below erred in sustaining the plea of laches, relies in part upon the decisions of this court in the cases of Los Alamitos Sugar Co. v. Carroll, 173 F. 280, 97 C. C. A. 446, and Columbia Graphophone Co. v. Searchlight Horn Co., 236 F. 135, 149 C. C. A. 345; but we think there is nothing in either of these cases in any way at variance with the general rule upon the subject to be hereinafter stated.

In the Alamitos Co. Case, Carroll sued for the alleged infringement of a patent issued to him for a load-dumping apparatus of date June 2, 1896, and a subsequent one of date December 7, 1897, for improvements thereon. In that case the record showed that the contractor employed to build the sugar company's dumping apparatus "made several examinations of that of Carroll, taking some notes and drawings thereof, before undertaking to construct the appellant's device, but that the manager of the appellant company had also a talk with Carroll in respect to the latter's apparatus, and that the manager, on the 12th of June, 1897, was notified in writing by Carroll of the issuance to him of his letters patent, and was expressly warned against infringing upon them. Carroll also testified that prior to the commencement of the suit he had a conversation with the manager of the appellant company on the street in Los Angeles, in which, said the witness, "I told him that he had infringed on my patent, and he told me that he would be willing to pay me a nominal sum. I told him, 'No, I wouldn't accept a nominal sum;' that he could have it at a royalty at a cent per ton. He said, if I wouldn't give it to him at a nominal sum, he would take it. I told him positively, 'If you will take the dump and put it away from me, you will do it over my dead body. I will defend my-

self.'" The record of that case also showed that Carroll employed an attorney to bring suit against the sugar company for a contingent fee; that the matter was in the attorney's hands for a good while, who died before bringing the suit; and that subsequently, when Carroll got sufficient money to commence action, he instituted that suit; and we held: "Upon the record we do not think that it can be fairly said that there was any acquiescence upon the part of the appellee in the appellant's infringement, or that the circumstances are such as in equity bar the action."

In the Columbia Graphophone Case, respecting the question whether the delay in bringing that suit amounted to such laches as would bar it, we said:

"It was stipulated between the parties hereto that within six years prior to the commencement of this suit the appellant sold the horns which were alleged to infringe the appellee's patent, and it was in evidence that as early as 1906 the appellee's predecessor in interest notified the appellant and the manufacturers named in the answer of their claim that their rights in the Nielsen horn were being infringed, and that all of those companies so notified denied the infringement and denied the validity of the Nielsen patent, and said that the owners of the patent 'would have to go to the courts before any particular one would stop making the horn.' There was evidence, and it was not controverted, that the appellee's predecessors were without the necessary funds to commence litigation, that the expense of litigation would have been very great, and that it was not until April, 1910, that they placed the matter in the hands of an attorney, who brought the first suit early in 1911. In short, large and powerful manufacturers were infringing the device, and the owner of the patent was without funds to carry on an expensive litigation. But the owner's delay was accompanied by no act to induce the appellant to believe that its infringement was acquiesced in, and by no act amounting to estoppel."

In the instant case the appellant, according to the record, did nothing for more than 16 years. The general rule has been many times declared to be that nothing can call into activity a court of equity but conscience, good faith, and reasonable diligence. MacKnight v. Taylor, 1 How. 161, 11 L. Ed. 86; Sullivan v. Railroad Co., 94 U. S. 806, 24 L. Ed. 324; Hardt v. Heidweyer, 152 U. S. 547, 559, 14 S. Ct. 671, 38 L. Ed. 548. In Leggett v. Standard Oil Co., 149 U. S.

287, 294, 13 S. Ct. 902, 904 (37 L. Ed: 737) the Supreme Court said:

"So far as the alleged promise embodies any element of a contract or of an undertaking to compensate the complainant for the use of his so-called secret, the statute of limitations and laches interposed by the defendant was clearly a bar to any recovery on that ground, because the alleged promise, if the proof was sufficient to establish it, was made in September, 1873, and the amended bill seeking relief thereon was not filed until January 13, 1888—some 14 or 15 years later. This lapse of time not only constitutes a bar, such as the statute of limitations interposes, but shows such laches as will clearly preclude any right to relief. McLean v. Fleming, 96 U. S. 245; Speidel v. Henrici, 120 U. S. 377; Galliher v. Cadwell, 145 U. S. 368, 372. No sufficient reason is given for this delay in suing. It is sought to be excused on the ground of the plaintiff's poverty during this period; but in the case of Hayward v. National Bank, 96 U. S. 611, 618, this court said that a party's poverty or pecuniary embarrassment was not a sufficient excuse for postponing the assertion of his rights. So that this alleged promise of the defendant can in no way avail the complainant in the present case, either as a ground on which to predicate any claim for relief or as an estoppel upon the defendant from denying the validity of the patent."

See, also, Prince's Metallic Paint Co. v. Prince Mfg. Co., 57 F. 938, 6 C. C. A. 647, and cases there cited.

The judgment is affirmed.