WOODS, Circuit Judge
(after stating the facts as above)’. The contention of the appellant that the Corcoran patent is invalid, because it claims distinct machines, one a setting-up machine, and the other a trussing machine, is based upon no assignment of error which is adapted to raise the question, and is otherwise untenable. The so-called “setting up” and the “trussing” are no more than successive stages of the same process, and are so' treated in the specification of the patent. See Hogg v. Emerson, 11 How. 587, 605. The attempt to show by the testimony of Corcoran, the patentee, that the patent embraced something which he did not invent, and to restrict the patent to his understanding of the scope of the invention, was unwarranted and improper. Even if he had been a party to the suit, he could not have been bound by a mistaken judgment which he might have been led to declare of the scope or character of his patent, and, as against the assignee of his title, his testimony in that particular was wholly incompetent. Except as controlled by the prior art, letters patent, like other writings, are to be construed and interpreted by the terms in which they are. expressed.
The proposition that the bottom plate, I, which is described in the claim as removable, is in fact not removable, rests on the erroneous assumption that the specification of a patent should be controlled by the drawing. The contrary is nearer true. A drawing is not to be regarded as a working plan, unless it is so stated in the specification; (Caverly’s Adm’r v. Deere & Co., 24 U. S. App. 617, 13 C. C. A. 452, and 66 Fed. 305); and any apparent inconsistency with the specification, which a skillful mechanic may overcome without the exercise of inventive power, is of no significance.
The controlling question of the case is whether the second claim of the patent in suit shows invention. The court below was unable to find in the mass of testimony adduced any such combination as that shown in the patent. “There is proof in the record,” says the opinion, “of vertical standards to hold the truss-hoops and of bottoms to receive the ends of the staves, but the proof fails to show a combination of recessed standards with truss-hoops and the removable bottom and the driving weight, as claimed in this patent.” According to that statement, if it be closely analyzed, the differences between the combination of thé claim and the recog *295 nized prior art are three, namely: (1) Recesses in the standards; (2) removability of the bottom plate;, and (3) the driving weight. The contention of the appellee here is less specific. It is asserted that “nowhere in the prior art did a machine exist in which all the staves were driven home simultaneously through fixed truss-hoops, and leveled against a bottom sustained in definite relation to the hoops.” And again it is said: “The radical distinction in the Corcoran advance lies in the fact that he drives the staves while the truss-hoops are stationary, whereas in the prior devices, with one exception, the truss-hoops are forced along while the staves are stationary.” The removable bottom, it will be observed, is not essential to either of tnese propositions. The “one exception” referred to is the Deering patent No. 191,335, which, it is said, is for a “machine to pound on the stave ends,” in which the hoops are set one at a time (it being necessary to readjust after each setting the dependent standards which clasp the barrel in the interval while the piston is performing its stroke), and do “not level against the abutment plate in unison with the simultaneous tightening of all the hoops, which is Corcoran’s central idea.” These propositions of counsel and the view declared by the court alike can be accepted only by assuming or conceding the further contention that the trussing of “butter tubs,” as distinct from “barrels,” began with Corcoran, and that the earlier patents for barrel-trussing devices are.not a part of .the prior art to be considered. “The Corcoran construction,” it is said, “while simple and efficient as a means of trussing tubs or half-barrels, would have been wholly inefficient for trussing barrels, for the reason that more than half of the barrel would project over the top of the Corcoran standards, and with the fiare that the staves have, within said standards, the upper ends of the barrel staves, if seated in the Corcoran truss, would radiate to such an extent as to render impracticable the use of a driving weight, and at the same time the upper halves of the staves, being wholly unsupported, would yield in an outward direction to the blows from such weight, and therefore would prevent the compact seating of the staves within the truss hoops, shown in the Corcoran invention as applied to butter tubs.” This may all be conceded, but it does not follow that the transition from barrel trussing to the trussing of half barrels or tubs was at all difficult, or involved the exercise of more than mechanical skill. To illustrate: One of the drawings of the Dann patent, No. 289,393, represents barrel staves projecting more than half their length above the standards, and above the uppermost trussing hoop, and radiating to such an extent as to render impracticable the use of a driving weight; but nothing could be more evident than that, if the upper halves of the staves there shown were cut off, the driving weight could be used, and that the result of the operation, without any change whatever in the form of the device, would be a half-barrel or tub. Other patents in evidence, notably the Wycoff, No. 6,813, and the Bayley, No. 190,730, show machines for trussing barrels which without essential alteration could be used for trussing tubs, and their construction is such that if they do not, part *296 by part, anticipate the combination of Corcoran, they make it impossible that the machines of the appellant, constructed as they have been in conformity either with the Ulrich patent, No. 356,217, or the Glader & Smith patent, No. 477,195, shall be deemed to infringe that combination. The earlier patents mentioned show recessed standards, some vertical, as in the Deering device, and some horizontal, as in the Wyeoff and Bayley machines, through the truss-hoops of which, held in the recesses of the standards, the staves are driven simultaneously against bottom plates sustained in a definite relation to the hoops. That is done, it is true, in the Wyeoff and Bayley machines, by pushing forward the standards, and thereby forcing the hoops upon the staves; but the process and effect, it is quite clear, are mechanically the same as if the staves were driven through stationary hoops; and if it were proposed to employ the machines in trussing half-barrels, instead of barrels, the only change of construction and operation required would be to make stationary one of the leveling heads and one set of standards, and to use the other leveling head as a piston head, in lieu of the driving weight, to force the staves simultaneously through the hoops. Indeed, in the Wyeoff construction one of the cup dies, or pots, is shown to be stationary, and the staves are forced into it, and through the hoops held in its annular recesses by the pressure or stroke applied at the other end, just as in the Corcoran device. In the Deering machine, as its operation is explained, the staves are driven through the hoop, and not the hoop upon the staves. There is, to be sure, but one recess in the standards, but the standards are adjustable so as to receive into the recess the different sizes of hoops successively as necessary, and to hold them in a fixed position while all the staves are driven simultaneously through each hoop in its order, until the intended result is accomplished. The substitute for the driving weight and rope is a platform moved by a piston, and, instead of a continuous pressure, the specification says that the piston with the platform “may be dropped down and brought up again suddenly with a strong stroke against the lower end of the barrel, thus setting the hoop through the means of, percussion.”
It need not be said that the Corcoran claim is totally void; but, if upheld, it must be restricted to the particular construction described. The right to drive staves through trussing hoops resting in annular rings or recesses on the inner side of a pot is covered by the prior art, and when it was found, if not anticipated, that the bottom of the pot was liable to be broken or worn in the process of trussing, it required no invention to insert a false or removable bottom, which could be replaced when necessary. In fact, the leveling heads shown in the Bayley patent are or could easily be made removable. The practice of making removable such parts of machinery as are especially exposed to wear or injury is too old to admit of the exclusive appropriation of that feature of construction in any kind of machine. Corcoran’s patent discloses no such intention. The bottom, I, in his device, was made removable evidently in order that in Figs. 1 and 2 it might be inserted, *297 and again withdrawn, after the dropping down of drop bottom, D, and in order that in Fig. 8 the standards might be adjusted to hoops of different sizes. In the machines of the appellant the removable bottoms contribute to no such adjustments, and are used solely for the purpose of economical replacement when broken or unduly worn. The decree below is reversed, with direction to dismiss the bill for want of equity.