AMERICAN HOIST & DERRICK CO. v. NANCY HANKS HAY PRESS & FOUNDRY CO. et al.

(District Court, N. D. Georgia, W. D.    July 28, 1914.)

No. 12.

**1. PATENTS (§ 328\*)—VALIDITY AND INFRINGEMENT—SLING FOR SUGAR CANE.**

The Crosby patent, No. 758,959, for a sling for holding sugar cane, while all of the elements of the device are old, is for a new and useful combination, and discloses patentable invention; also *held* infringed.

**2. PATENTS (§ 82\*)—COMBINATIONS—RIGHT TO EQUIVALENTS.**

The owner of a patent in its commercial article may substitute well-known equivalents for any of the parts, without depriving its product of the protection of the patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 105–107; Dec. Dig. § 82.\*]

**3. PATENTS (§ 102\*)—SUITS FOR INFRINGEMENT—DEFENSES.**

A verbal error or other insufficiency in the oath attached to the application on which a patent was granted constitutes no defense to a suit for infringement.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 142; Dec. Dig. § 102.\*]

**4. PATENTS (§ 112\*)—SUITS FOR INFRINGEMENT—DEFENSES—PROCEEDINGS IN PATENT OFFICE.**

Courts will not look with great favor on objections to the history of a patent in the Patent Office, which has been finally granted after thorough examination when such points are collaterally made, and particularly when made by an infringer.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 162–165; Dec. Dig. § 112.\*]

In Equity. Suit by the American Hoist & Derrick Company against the Nancy Hanks Hay Press & Foundry Company, a copartnership, and Charles H. Field, James P. Field, and John Field. On final hearing. Decree for complainant.

Timothy Dwight Merwin, of New York City, for complainant.

James P. Field, of Atlanta, Ga., a member of defendant firm, for defendants.

NEWMAN, District Judge. [1] This is a suit brought by the complainant against the defendants to enjoin the infringement of claim 1 of certain letters patent No. 758,959, issued by the United States Patent Office to Oliver Crosby, American Hoist & Derrick Company, assignee, May 3, 1904. Claim 1 of said patent is as follows:

---

"In a device of the class described, combination with a rope, a clamp slidable thereon, a dog carried by said clamp and adapted to engage said rope to prevent its being drawn in one direction, but allowing it to be drawn therethrough in the opposite direction, means carried by said clamp for holding the end of the rope to form a loop, and a dog for securing said means in position holding the rope."

The patent is for a sling for holding sugar cane. Two questions are involved in the case. The first is whether the patent named is invalid for want of novelty and invention, and the second, whether the defendant is infringing it.

The patent is a combination of admittedly old elements. The claim for it is that the combination of these old elements produces a new and useful result. The purpose and use of the device is the binding of sugar cane into tight bundles for storage in the vicinity of the sugar mill until required for use in the operation of the mill. The method of use is to take the sling, and the rope or chain attached thereto, to the field and place it in the proper position on the cart before the cane is loaded. When the loading is completed the chain or rope is brought around the load and the ring in the end of it is placed in the device provided for its reception in the sling. On reaching the mill a derrick picks up the bundle thus made, by the end of the rope or chain designed for that purpose, and the act of thus lifting the load from the cart compresses it into a tight bundle, and it is held in this compressed condition, by means provided, and stored near the mill. When required for use at the mill, the derrick picks up the bundle in the same way, carries it to the conveyor table, and then, being tripped, drops the loose cane on the conveyor table to be placed on the conveyor and carried to the mill. This is a brief, but fairly accurate, statement of the use of the device in controversy here.

It will be perceived from claim 1 that the patent embraces a rope, a clamp sliding thereon, a dog carried by the clamp, and so arranged as to engage the rope and prevent its being drawn in one direction, while it may be drawn in the opposite direction, and a means carried by the clamp for holding the end of the rope so as to form a loop, and a dog securing the means in position, holding the rope. Each of these separate elements was well known before Crosby applied for his patent in 1898, but it is the combining of them in a device for accomplishing the purpose above set out as to the practical handling of sugar cane for use in the mills, and the practicability and efficiency with which the device accomplishes the desired result, that the complainant claims renders it patentable.

Several prior patents have been offered in evidence, only four of which relate to cane slings, the others all belonging to other arts. Of these four the so-called second Mallon patent, No. 610,816, application for which was filed on May 31, 1898, some six weeks after the date set by Crosby for the invention of his patent, April 15, 1898, cannot be considered, since the testimony establishing the date of the invention is not questioned or contradicted in any way here. Another of these four, patent No. 922,929, called here the third Mallon patent, was not applied for until January 18, 1909, 4½ years after the Crosby patent issued, and of course cannot be considered. The earliest of these four cane

sling patents is what is known here as the Ancoin patent, No. 543,666, issued July 30, 1895, about three years before the date of the Crosby application. This patent, while it contained some of the elements of the Crosby patent, did not contain them all, nor in fact the most important and most vital ones. The first Mallon patent, No. 571,675, issued November 17, 1896, is chronologically the second of these cane sling patents, and the last to be mentioned here. This, like the Ancoin patent just mentioned, contained some of the means found in the Crosby patent, but only partially accomplished the end desired. It is, like the Crosby patent, a tripping sling, but has no arrangement or means by which the bundle of cane can be held as a bundle until required for use, which is a vital point in the Crosby device.

It is therefore evident that none of these prior patents anticipates or renders void the Crosby patent, as none of them has the same elements or combination of elements, or accomplishes, in whole, the desired purpose. But it is conceded that all the elements embodied in the Crosby patent in question here were known in the prior arts, although not in combination or put in operation together as they are in the Crosby patent. It is perfectly clear from the evidence that Crosby, by uniting these elements in his patent, accomplished, in a feasible and economical manner, the result sought for, which had never before been done. I do not think that the putting together of these different elements into the device for which the patent was granted involved mere mechanical skill, as claimed by defendants, but I am satisfied that it was accomplished by the exercise of the inventive faculty in conceiving a method of so putting these elements together as to accomplish a new and useful result, or the same result in a better way than it had ever been accomplished before. Besides this, we have a presumption in favor of the patentability of a device where a patent has been allowed by the Patent Office, which is certainly not sufficiently overcome by the evidence here, either by the proof or the illustration made of the use of the apparatus in the presence of the court.

The rule laid down by the Circuit Court of Appeals for the Eighth Circuit, in St. Louis Street Flushing Mach. Co. et al. v. American Street Flushing Mach. Co., 156 Fed. 574–576, 84 C. C. A. 340, in reference to combination patents, is as follows:

"There is no claim that any of the elements of the patent are new. The tank, the water under pressure, the nozzle, the delivery apertures, and the means of adjustment are all old, but the contention is that the particular combination of these elements in the patent produces a new and useful result, and is patentable. The new and useful result claimed is the effective loosening up of dirt and material on the street and washing them off into the gutter by one action without injury to the street. To accomplish a new and useful result within the meaning of the patent law (section 4886, Rev. St. [U. S. Comp. St. 1901, p. 3382]), it is not necessary that a result before unknown should be brought about, but it is sufficient if an old result is accomplished in a new and more efficient way. If the value and effectiveness of a machine are substantially increased, the new combination of old elements, which does it, is patentable."

In E. H. Freeman Electric Co. v. Johns-Pratt Co., 204 Fed. 288, 122 C. C. A. 512, the same rule is expressed in the first headnote in the following language:

"Each and every separate element of a combination may be old, and yet the combination as a whole may show patentable novelty and invention, if the several elements so coact as to produce a result which is either new in itself, or by means of such coaction is produced in a novel or improved way."

Tested by the rule laid down in these decisions, and in many others which might be cited, there is no question in my mind that the Crosby combination of old elements in his device for accomplishing the desired result, was patentable.

[2] It is claimed, however, that complainant's cane sling as now in commercial use—as it is now manufactured and sold—is a different device from that shown in his patent. The changes made by the complainant company in its cane sling are these: First, the change from a pair of jaws locked in closed position by a spring-pressed dog, to a tumbling hook, held in closed position by a spring-actuated dog, the latter being, as was the former, for the purpose of releasing the compressed bundle; and, second, the change from the use of a rope to a chain, it having been found, as the evidence shows, that the latter was more desirable for the reasons that the rope was affected by the dampness and mud in the cane fields, and was not as durable as a chain would be. Also the change from the rope to a chain necessitated a change in the device from a cam to a pawl, that is, instead of retarding the backward motion of the rope, after the cane had been sufficiently compressed, by the pressure of a cam on the rope, the backward motion of the chain is prevented by the pressure of a pawl against the links of the chain, thus holding the chain rigidly in position, and also the face of the pulley over which the rope passed was changed from a concave surface to fit the rope, to a V-shaped surface to fit the links of the chain.

The complainant company, as I understand from the evidence, manufactured a large number of cane slings in strict accordance with its patent, which were sold and no complaint was made of them in any way, but as the manufacture and sale of these cane slings progressed, it was found advisable to make the changes indicated for the purpose of accomplishing the results obtained before and to accomplish them in a more satisfactory manner. As to the change from the rope to a chain, the one is easily the equivalent of the other. As to the change from a cam to a pawl, exactly the same result was obtained, that is to prevent the binding element from sliding backward after having been drawn taut. And as to the other change, the releasing means, the same result was accomplished by the substitution of the tumbling hook for the closed jaws.

It will be seen from many authorities, some of which will be cited herein, that the interpretation of the law on the subject of equivalents is very broad, the only necessary factors being that the element substituted shall, in practically the same arrangement of parts, perform the same function in accomplishing the same result, and that it shall have been known as a proper substitute for the element displaced thereby at the time of the issuance of the patent. Under this interpretation of the law, there can be no doubt but that the changes from the patented device to the present commercial device of complainant company are each and all mere equivalents, and not such changes as would deprive the

commercial device of the protection of the letters patent granted to complainant on its original device.

What seems to be the law on this subject is very clearly stated in Walker on Patents (3d Ed.) p. 297, as follows:

"No substitution of an equivalent, for any ingredient of a combination covered by any claim of a patent, can avert a charge of infringement of that claim. But like substitution of something which is not an equivalent will have that effect. The doctrine of equivalents may be invoked by any patentee, whether he claimed equivalents in his claim, or described any in his specifications, or omitted to do either or both of those things. The patentee, having described his invention and shown its principles, and claimed it in that form which most perfectly embodies it, is, in contemplation of law, deemed to claim every form in which his invention may be copied, unless he manifests an intention to disclaim some of these forms. Combination patents would generally be valueless in the absence of a right to equivalents, for few combinations now exist, or can hereafter be made, which do not contain at least one element, an efficient substitute for which could readily be suggested by any person skilled in the particular art."

Continuing upon the same subject, this authority says, in section 353:

"Function must be performed in substantially the same way by an alleged equivalent, as by the thing of which it is alleged to be an equivalent, in order to constitute it such. This substantial sameness of way is not necessarily an identity of merit, nor a theoretical scientific sameness. In a purely scientific sense, a screw always performs its function in a substantially different way from a lever, and in substantially the same way as a wedge. Screws and wedges are equally inclined planes, while a lever is an entirely different elementary power. But screws and levers can practically be substituted for each other in a larger number of machines than screws and wedges can be similarly substituted. When a lever and a screw can be interchanged and still perform the same function with a result that is beneficially the same, they are said to perform the same function in substantially the same way."

In American Steel & Wire Co. of New Jersey v. Denning Wire & Fence Co. (C. C.) 160 Fed. 108, 121, the court, in discussing this question of equivalents, says this:

"The term 'mechanical equivalent,' as used in the law of patents, means that each of the ingredients comprising the invention covers every other ingredient which, in the same arrangement of the parts, will perform the same function, if that was well known as a proper substitute for the one described in the specifications at the time of the patent" (citing Imhaeuser v. Buerk, 101 U. S. 647–656, 25 L. Ed. 945; National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 Fed. 693–710, 45 C. C. A. 544).

And further in the same opinion the court says this:

"The authorities concur in holding that the substitution of an equivalent of a thing in the sense of the patent law is the same as the thing itself; so that if two devices do the same work in substantially the same way and accomplish substantially the same result, they are the same even though different in name, form, and shape."

See, also, decision of the Supreme Court of the United States in United States v. Société Anonyme Des Anciens Etablissements Cail, 224 U. S. 309, 322, 32 Sup. Ct. 479, 56 L. Ed. 778.

Coming next to the question of infringement by the defendants of complainant's patent, it is not difficult of determination. It is perfectly plain from the oral evidence and from the exhibits in evidence that the defendants have infringed the complainant's device as changed

from the exact features of its patented structure to that of its commercial structure. The defendants' testimony shows that they had before them all of the patents granted for cane slings when they were considering the character of sling they would manufacture and sell, and the form adopted by them is so close an imitation of complainant's device as that the slight difference in the shape of the device for holding the chain when the bundle is constricted and in the shape of the releasing dog are certainly not sufficient to justify the defendants in the manufacture and sale of their sling, and, as shown in the operation in the courtroom, in the presence of the court, it works in precisely the same way as the complainant's sling. In this illustration of their practical use in the presence of the court the two slings were operated on the same bundle of cane at the same time, one supporting each end of the bundle, and the result of this illustration or exhibition was that the operation of the two slings was practically, if not identically, the same. It having been held above that the commercial device of complainant is protected by letters patent granted to complainant on its original device, it necessarily follows that defendants' device is a clear and undoubted infringement of Crosby's letters patent.

[3] It may be proper to refer briefly to some suggestions made by the defendants in the brief filed by them. The first of these is that the Crosby patent is void because, in making the application, he did not make the proper oath. The claim is that he used the word "the" instead of the word "his" in the phrase "that he does not know and does not believe that the same was ever known or used before *the* invention or discovery thereof." It seems to me this would be wholly insufficient as a basis for any objection to the sufficiency of the patent. It is held, however, that infringers have no right to make points like this on the oath attached to the application, even if such an oath is absolutely necessary to the validity of the patent. Holmes Burglar Alarm Tel. Co. v. Domestic, etc., Tel. Co. (C. C.) 42 Fed. 220–222.

Another point made by the defendants is that the patent is void "because the application was not completed and prepared for examination, in essential parts within one year after the date of filing the application." Rev. St. § 4894 (U. S. Comp. St. 1901, p. 3384). The record does not show that more than a year elapsed between a letter and its reply, although exactly one year did elapse in one instance. The correspondence between the attorneys for Crosby and the Patent Office seems to have been continuous and at intervals of within one year, so that this point is not sustained by the proof.

[4] "That the application was not prosecuted within one year after official action therein, and no showing was made why the delay was unavoidable," and therefore the patent is illegal and void, is another point made by the defendants. As has been stated, the correspondence between Crosby's attorneys and the Patent Office was continuous. It is true it was several years before the patent was finally granted, but during all that time suggestions were being made by the examiner of the Patent Office, which brought about changes by Crosby from time to time, until finally the patent and the drawings of the same were completed to the satisfaction of the Patent Office and the patent was grant-

ed, as stated, on May 3, 1904. It seems to me the courts will not look with great favor on objections to the history of a patent in the Patent Office when it has been finally granted after thorough examination, when such points are collaterally made, and particularly when made by a recognized infringer of the patent.

I do not think any of these points are meritorious, even in the event they would be sustained if made directly against the validity of the patent.

The utility of complainant's cane sling is manifest from the evidence, which shows that 270,000 of these cane slings have been manufactured and sold by complainant, and, so far as this evidence shows, the use of them has been perfectly satisfactory to the purchasers. Complainant's commercial success in selling these cane slings for quite a number of years is clearly established by the evidence in the case.

The result of the foregoing is that complainant is entitled to a decree against the manufacture and sale by the defendants of these cane slings, because the same are an infringement of letters patent No. 758,959, granted to Oliver Crosby, the complainant, the American Hoist & Derrick Company, assignee.