SEWARD TRUNK & BAG CO. v. OSTERWEIL et al.

(Circuit Court of Appeals, Third Circuit. May 29, 1918.)

No. 2356.

PATENTS ⬤⟿328 — VALIDITY AND INFRINGEMENT — HANGER FOR WARDROBE TRUNKS.

The Seward patent, No. 1,135,404, for a hanger for wardrobe trunks, *held* not anticipated, valid and infringed.

Appeal from the District Court of the United States for the District of New Jersey; Thos. G. Haight, Judge.

Suit in equity by the Seward Trunk & Bag Company against David Osterweil and others, trading as L. Goldsmith & Son. Decree for defendants, and complainant appeals. Reversed.

Chas. E. Brock, of Cleveland, Ohio, M. G. Buchanan, of Trenton, N. J., Hull, Smith, Brock & West, of Cleveland, Ohio, and Melville Church, of Washington, D. C., for appellant.

Russell M. Everett, of Newark, N. J., for appellees.

Before BUFFINGTON and McPHERSON, Circuit Judges.

McPHERSON, Circuit Judge. This action is for the infringement of letters patent No. 1,135,404, granted April 13, 1915. The District Court dismissed the bill (opinion not reported), holding the three claims in suit to be void for lack of invention. If the claims are good, infringement is plain, so that the only matter we need consider is the question of invention. In our view, the device is patentable, and this conclusion is due so much to the excellent argument for the Trunk Company that we follow its outline in what we are about to say.

The device of the patent is for use in a wardrobe trunk, the well-known trunk that stands upright and opens outwardly on vertical hinges. Usually one side of the trunk carries drawers for smaller articles, while the other side is adapted to carry coats, trousers, dresses, and similar garments; the chief advantage being that such garments can be hung therein, instead of being folded and packed in layers. As soon as the trunk is opened, any one of these garments can be easily reached without disturbing another. Wardrobe trunks were first offered about 1900, and have since come more and more into use; their growing popularity being due to the ready access they afford to the suspended garments, and to the fact that these garments are carried in better condition. As was to be expected, improvements have since been made in several particulars, and we think the patent in suit marks a distinct advance in the art, and deserves the protection of the law.

In the beginning, the usual hanger that carried the garment was somewhat curved and was itself hung by a single hook, placed at the middle of the curve and adapted to engage with a rod or bar in the compartment. Sometimes this rod could be pulled forward, so as to move the group of hangers and the garments together out of the

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

compartment before they were lifted off the rod. These "one-point" hangers (Seaman patent, No. 753,743, applied for in June, 1903) carried coats or other sleeved garments very well, but were not as suitable for dresses or cloaks, since these should be folded or draped over a horizontal support. The trunks were soon improved by using a "two-point" hanger, which was a horizontal bar with a hook at each end and a depending integral portion shaped to carry a coat and other garments. The bar served two purposes: It was the support for the whole hanger, and over its horizontal surface a dress or a cloak or a pair of trousers could be draped or folded, while on the depending portion a coat or other sleeved garment could also be hung. Whichever kind of hanger was to be used, another useful purpose would obviously be attained, if the hangers could be removed from the compartment, either singly or collectively, and accordingly means to accomplish this result were devised, and may be found in the Hawley and Wheary patent, No. 875,811, applied for in 1907, and the Winship patents, Nos. 1,096,675 and 1,115,362, applied for in 1912 and 1911, respectively. But these devices had the fault that, when the hangers with the suspended garments were moved forward, they obstructed the opening of the drawers (as usually arranged), unless the two compartments were spread out in alignment, and this interfered with the trunk's stability, especially with the smaller sizes. The problem was to devise a trunk of any size with horizontal drawers in one side, and a series of hangers in the other side, and to arrange the hangers so as to use all the available room, and to admit of quick and easy movement forward, in order that any hanging garment could be reached without delay, without obstructing the drawers, and without impairing seriously the stability of the open trunk. All these requirements are met by the simple device of the patent in suit, which is essentially a swinging gate with projecting brackets spaced to carry "two-point" hangers.

In brief, the improvement consists of a narrow oblong gate or frame, hinged to the outer side of the compartment, the gate carrying at least two brackets a few inches long, with upwardly projecting ends adapted to support a "two-point" hanger. The gate with its burden of garments can be swung as a whole completely into the compartment or completely outside; when outside, it stands at a right angle, and gives immediate access to the garments without obstructing the drawers. The specification enlarges upon these advantages in the following language:

"This invention relates to certain new and useful improvements in wardrobe trunks and more particularly to a gate hanger especially adapted to be used in connection with this class of trunk for supporting the garment hangers in the hanging compartment thereof; the object being to provide a novel form of gate hanger having brackets carried thereby, forming a two-point suspension for the garment hangers, so as to prevent the same from swinging when the garments are arranged thereon when the trunk is being shipped.

"Another object of the invention is to provide a gate hanger which is so mounted that the same can be swung outwardly from its compartment in order to allow the garments supported thereby to be accessible so that they can be readily placed in position or removed therefrom; means being provided for

locking the gate hanger in closed position so as to hold the garments within the hanging compartment.

"Another object of the invention is to provide a gate hanger which is exceedingly simple and cheap in construction, and one which is preferably formed of a single piece of metal having spaced brackets projecting laterally therefrom, upon which the garment hangers are spaced and supported in such a manner that they are firmly held in position.

"Another object of the invention is to provide a trunk with a body portion having a cover portion substantially the same size forming a hanging compartment in which the gate hanger is mounted."

The claims now in dispute are 1, 3, and 4:

"1. In a wardrobe trunk, the combination with a body portion and a cover portion pivotally connected together, said cover portion having a hanging compartment, of a gate hanger pivotally mounted within the cover portion, brackets extending laterally from said gate hanger, and garment hangers having a two-point suspension mounted upon said brackets."

"3. A wardrobe trunk, comprising a body portion and a cover portion pivotally connected together, a gate hanger pivotally mounted within the cover portion and capable of swinging outwardly and away from the body portion, said gate hanger having spaced laterally projecting brackets connected thereto.

"4. A wardrobe trunk, comprising a body portion and a cover portion pivotally connected together, a gate hanger pivotally mounted within the cover portion on the side opposite to its connection with the body portion, said gate hanger being capable of swinging outwardly at right angles to the cover portion, and brackets carried by said hanger having upwardly projecting end portions."

What has thus been said is we think sufficient to explain and to discuss the subject. The device is simple and effective, and has met with immediate and marked success. We regard it as patentable. In the last analysis, the difference between a patentable improvement, and one that is produced by the skill of the calling, rests upon a difference of attitude between the minds that are required to decide. For example: To the district judge, this patent is not the product of invention; to our minds it goes beyond the ordinary skill and deserves a patent. On this point we can add nothing useful.

Only one patent was urged as anticipating, the French patent of 1912 to Coulembier, No. 444,513, and we think little need be said about this. In some respects the device resembles Seward's gate, but on the whole it is cumbrous and ineffective. As was pointed out by two of the plaintiff's witnesses, several reasons support this conclusion. One is that Coulembier loses about half the space in the hanger compartment, owing to the lozenge shape of his gate. This defect alone would make his trunk unsalable. Another reason is that, while "two-point" hangers might be used, although with difficulty, their horizontal surface would be too short, and they would be interfered with by the handle of the gate, and by the diagonal brace on its under side. There are no brackets, and the lozenge is gridironed by three bars, one long, and two short. Moreover, as the gate was obviously intended for "one-point" hangers, to be suspended from the central and longer bar, it would not be easy to place and remove hangers of the "two-point" variety. Still further, the Coulembier device is evidently adapted to a full-sized trunk, and could hardly be used in the steamer size; the difference in thickness between the two being

about 10 inches. And, even if the Coulembier hangers were of the "two-point" variety, they would not meet the needs of travelers, for the horizontal surfaces would not be long enough for folding or draping a cloak or skirt properly, and the coat hangers of the same variety would be adapted only for the garments of a young boy or girl, while wardrobe trunks are almost always used by older persons. And, finally, the device as a whole is practically out of the question, because one of the chief requisites of a wardrobe trunk is easy access to the hanging garments and easy removal of a hanger, and the central bar in the Coulembier gate would interfere with such access, if the lozenge were full of other garments.

Nothing in this opinion refers to the defendants' patented improvement that permits the easy removal of the gate and the hangers together. That matter is not before us.

The decree is reversed, with instructions to enter a decree in favor of the plaintiff.