RAUCHBACH–GOLDSMITH CO. v. SEWARD TRUNK & BAG CO.

(Circuit Court of Appeals, Third Circuit. November 20, 1918.)

No. 2417.

PATENTS ⬡⇒328—VALIDITY—ANTICIPATION.
    The Seward patent, No. 1,135,404, for a wardrobe trunk, having in combination a gate hanger pivotally within the cover portion, brackets extending laterally from the gate hanger and garment hangers, etc., *held* valid and not anticipated.

Appeal from the District Court of the United States for the District of New Jersey; Thomas G. Haight, Judge.

Bill by the Seward Trunk & Bag Company against the Rauchbach-Goldsmith Company. From a decree for complainant, defendant appeals. Affirmed.

Alan D. Kenyon, of New York City, for appellant.
Charles E. Brock, of Cleveland, Ohio, for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

⬡⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

BUFFINGTON, Circuit Judge. The present case in effect involves a review of our decision in Seward v. Osterweil, reported in 252 Fed. 136, —— C. C. A. ——, wherein we sustained the validity of Seward's patent, No. 1,135,404, for a wardrobe trunk. In the present case we have had the benefit of the views of a third member of this court who took no part in that case, and also the further light thrown on the art by a patent not before us in the former case, to wit, No. 1,024,366, granted April 23, 1912, to Paul Schiefer, for a clothing cabinet. Reference to our former decision saves a restatement of the facts.

The validity of Seward's patent generally, and also as affected by Schiefer's patent, has had our careful consideration, but we see no reason to question our previous conclusion. Seward was the first to produce a wardrobe trunk which had in combination the three elements of (a) "a gate hanger pivotally mounted within the cover portion;" (b) "brackets extending laterally from said gate hanger;" and (c) "garment hangers having a two-pointed suspension mounted upon said bracket." As soon as Seward disclosed it, his trunk went into such wide use that his combination of elements at once attracted the covetous eyes of infringers. In the whole working art of the trunk maker, as well as in the disclosures of the Patent Office, these infringers found nothing but Seward's combination which met their commercial needs; but they now urge that in the literary archives of the Patent Office there exist, not Seward's workable combination, but isolated elements of that combination, which should have suggested to him his successful combination.

We have re-examined this art, and we nowhere find anything that anticipated Seward's threefold combination, or in any way created such a step in the trunk maker's art that Seward's threefold combination was only the mechanical development of the art from that attained step. In our judgment, Seward's was an original conception, every element of which, co-operating in a new working way, was necessary to making and did make. Seward's trunk a success. So far as the record shows, these earlier trunks were either failures, or at any rate never made any headway in the art. Indeed, it is clear it is this threefold, original combination of Seward, and this combination alone, that make his device a success. No matter whether large or small, Seward's difference from the prior art was the difference between success and failure. Tested from the viewpoint of the patents that preceded Seward's, he gave the public something valued, workable, and novel in its sphere, and the disclosure was inventive in character. The public promptly put its seal of approval on his work, and this court, in sustaining the validity of the patent and staying the hand of an infringer, makes workably practical and commercially valuable the patent awarded him.

The decree below is affirmed.