## McMILLAN v. FISCHER AUTO BED & CAMP CO. et al.

(District Court, W. D. Washington, N. D.    January 12, 1920.)

### No. 169.

1. Patents ⬅239—Duplication of material feature of patented device does not avoid infringement.

   The duplication of a feature of a patented structure, the effect and advantage of which has been shown by the patent, does not in a patentable sense differentiate two structures in any substantial way.

2. Patents ⬅178—Not so strictly construed as to nullify doctrine of mechanical equivalents.

   The rule that a patentee must be strictly limited to the language of his claims is not to be so strictly applied as to nullify the doctrine of mechanical equivalents.

3. Patents ⬅239—Adding feature which merely complicates structure does not avoid infringement.

   The addition of a feature which only complicates and makes more cumbersome the patented structure does not differentiate it in a patentable sense.

4. Patents ⬅167(1)—Cuts cannot override plain language of claims.

   The cuts in a patent cannot be used to contradict the plain language of the claims.

5. Patents ⬅328—For automobile bed infringed.

   The McMillan patent, No. 1,136,885, for a support for automobile beds, *held* infringed by a structure which differs only in the substitution of mechanical equivalents.

In Equity. Suit by Clifford K. McMillan, doing business as the Auto Bed Company against the Fischer Auto Bed & Camp Company, Casper Fischer, and Elvira Fischer. Decree for complainant.

G. Wright Arnold, of Seattle, Wash., for complainant.

P. M. Liddy and Thos. R. Horner, both of Seattle, Wash., for defendants.

CUSHMAN, District Judge. The patent in suit, No. 1,136,885, relates to the art of automobile beds capable of affording sleeping accommodations for one or more persons when set up in the automobile. More particularly, the object of the invention is to provide an automobile bed which utilizes the seat cushions of the vehicle, to be supported on bars, which, in turn, are supported by the backs of the seats, with a canvass sling slung above such cushions and resting at its intermediate portion upon the cushions; the function of the sling being to provide a support for the head and feet of the user while the back, shoulders, and hips are supported by the cushions, constructed in such a manner as to permit of convenient storage and carriage in the automobile when the bed is not in use.

Among other things, it was necessary, in order to get a bed of sufficient length under ordinary conditions in an automobile, that the bed be extended over, or in front of, the back of the front seat. Hence some means must be provided for spanning the space in front of the front seat and the space between the front of the back seat and the

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cushions, which, when in position, form a part of the bed, in order that the head and feet of the user might be supported. The cushions, being of small width, were positioned so as to carry the chief weight of the occupant or occupants. It was also necessary to set the bed as low in the car as possible to give as much clearance above the bed and between it and the top of the automobile as possible, and increase the facility of getting in and out of the bed.

The claim of the patent in suit is as follows:

"The combination with a two-seated vehicle body having a supported top thereover, of a number of spaced longitudinal bars overlying the backs of the seats and each having one end formed into a back engaging arch, a pair of cushions arranged transversely on the bars, and a flexible sling resting at its intermediate portion on said cushions and having attaching means connected to the supports of said top."

The defense is noninfringement. The points of difference in defendants' device, upon which most reliance has been placed, are two:

[1] First. That the longitudinal bars used by the defendants are arched, or hooked, at both ends, while the claim of the patent in suit calls for bars with "one end formed into a back engaging arch." The evidence shows that the arch called for in the claim was adopted with the object of securing the bed against lateral movement; that it was designed originally for a type of car with the back of the back seat higher than the back of the front seat; that this feature lowered the bed and brought the longitudinal bars on a level with, and across the top of, the back of the front seat.

The idea being clearly shown by the patent in suit of accomplishing this in an automobile, where one seat back was higher than the other, by arching one end of these rods, no invention is involved, nor substantial difference in means or operation shown, by securing a further lowering of the bed by arching both ends of these longitudinal bars in order to hook them over the backs of both seats. Such a change would readily occur to one of ordinary mechanical skill familiar with the art. The duplication of a feature, the effect and advantage of which has been shown by the patent in suit, does not, in a patentable sense, differentiate two structures in any substantial way. Dunbar v. Meyers, 94 U. S. 187, at page 197, 24 L. Ed. 34; Walker on Patents (5th Ed.) § 34.

Second. Substantially the only other difference in defendants' device from that of the patent in suit is as to the means used of giving greater length to the bed at the foot by an extension of the canvas sling forward in the car beyond the edge of the supporting cushion upon which the intermediate portion of the sling rests. The width of the two seat cushions of an automobile, when placed edge to edge upon the longitudinal bars of both devices, being short of that which would be necessary to support in its entire length the reclining body of an adult, the object of the extension forward in both devices is to overcome this and secure a greater length, thereby affording support in the same plane for the feet of those occupying the bed. The means for accomplishing this, pointed out in the claim, are:

"A flexible sling resting at its intermediate portion on said cushions and having attaching means connected to the supports of said top."

The only thing shown in this particular art before the patent in suit is disclosed by the patent to Bradley, No. 1,082,223. The device there shown closely resembles a hammock fully spread at each end, or the ordinary canvas cot without side bars, attached to and set up in an automobile, being pulled or stretched forward over the back of the front seat. The cushions form no part of the structure in the device of the Bradley patent.

Upon consideration of the somewhat analogous art of beds to be set up and taken down in the cars of railroad trains, I conclude that the most novel and important feature of the patent in suit is the means disclosed of accomplishing the lengthening of the bed by means of the extended canvas. Plaintiff was early in the field, and his device met with wide and immediate success, and he has spent considerable sums of money in introducing its use. While not of an epoch-making nature, it is a meritorious invention, and entitled to liberal protection against mechanical equivalents.

In the patent in suit, a substantial, ever-present feature of automobiles, the top supports, are used as fastening points, or anchors, by attaching to which the forward end of the canvas sling, lateral extension and support are secured. The advantage of such a fastening forward to some fixed part of the automobile had been shown in the Bradley patent. By using the top supports for this purpose, the structure is lessened both as to weight and number of parts—both important points in such a structure, as it is obvious that such a bed would, ordinarily, only be used on extended trips and must be carried in the automobile.

[2] While it is true that the patentee must be held strictly to the language of his claim, even where the inventor was entitled to a broader claim than that to which he limited himself, and that, if he claimed only a part of his invention, he is presumed to have abandoned the remainder of it to the public, yet such rule, if absolutely applied, would abolish the doctrine of mechanical equivalents. The protection afforded by the patent against mere mechanical equivalents is not confined to claims that are ambiguous. The limitation in the present claim did not pertain to the inventive step, but was rather an adaptation of the invention to its environment. D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., 259 Fed. 236, —— C. C. A. ——. The necessity for some means to perform the function or work of extending the canvas remained to be overcome by defendants. They do not use the particular means specified in the claim; but the work of supporting and extending the canvas in the suit is performed by different means. The question, therefore, is: Is this means substantially different, or does it operate in a substantially different manner?

The defendants, in their device, do not fasten the foot of the bed to the top supports, or similar parts of the car. On account of this difference, they have been compelled to put in their device an additional part or feature, thus complicating the structure. This feature or member consists of arms or extensions of the hook or arch portion of the longitudinal rods forward of the cushions supported on the bars. To and towards the front end of these extensions, the canvas is

264 F.—43

stretched. By this means, the end of the canvas is pushed forward by these members and held up by them at the same time, both of which functions are accomplished in the device of the patent in suit by convenient attachment of the forward end of the canvas to some part of the top support in front of and above the plane of the bed. Swinging it to the top, it was only necessary to adjust the length of the cord or other attaching means to support the foot at the bed level. It was only necessary to carry the point of its attachment to the top support forward, or shorten such attaching means, in order to extend the canvas.

As long as the idea of supporting and extending the sling by attaching to the supports is clearly shown by the patent in suit, no invention is involved, or operative difference shown, merely by putting the supporting means below the sling and pushing the foot forward and up, instead of pulling it forward and up.

[3] The addition of a feature which only complicates and makes more cumbersome a structure does not differentiate it in a patentable sense. Viewed as a new feature or means for securing the extension and support of the sling, it constitutes merely a formal change, readily suggested to one of ordinary skill in the art, and not a substantially different means, and, by pushing the end of the canvas forward, instead of pulling, it, as in the device of the patent in suit, it cannot be said to operate in a substantially different manner, nor upon a different principle. It is a mechanical equivalent only, although a clumsy one. Counsel's likening the situation to the difference between propping a door open and tying it open is peculiarly appropriate.

That there is no substantial operative difference in the two devices in question was demonstrated in court by the attorney for complainant interchanging the means used for securing the support and extension of the canvas. After defendants' device was set up in the body of the automobile in the courtroom, plaintiff removed one of the horizontal bars, and substituted in its place one from his own device, and tied the canvas to the wind shield on the one side, leaving the opposite side supported by the two-piece arm of the defendants' structure, which left the bed in substantially the same position in every respect as before.

Defendants have contended that this was an unfair test, arguing that cut No. 1, accompanying the specifications of the patent in suit, discloses that the supports of the top, referred to in the claim of the patent, relate to the top of the bows upon which the canvas or other material of the automobile top directly rest, as distinguished from the side and end standards, which support the top.

[4] It is a well-known rule of patent law that such cuts or illustrations cannot be used to contradict the plain language of the claims. Elgin Co-operative Butter Tub Co. v. Creamery Package M. Co., 80 Fed. 293, 294, 25 C. C. A. 426. If the cut and language make the expression of the claim ambiguous, such ambiguity is removed by the following statement in the specifications of the patent:

"In the embodiment illustrated, the body B is provided with a suitable top T, which is attached thereto by means of the usual supports S. The

parts so far described form no part of the present invention, and are merely illustrated for disclosing its application."

That portion of the wind shield which may appropriately be described as its frame, in all automobiles where the top covers the entire length of the body of the automobile, bears substantially the same relation to the top as do its side and end supports, and ordinarily it is in fact one of the supports of the top.

[5] The conclusion that the changes made are merely formal and simple mechanical equivalents to those disclosed by the patent in suit is based upon the following, among other, authorities: Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935; Morley S. M. Co. v. Lancaster, 129 U. S. 263, 278, 9 Sup. Ct. 299, 32 L. Ed. 715; Weber Elec. Co. v. Union Elec. Co. (D. C.) 226 Fed. 482; Hess-Bright Mfg. Co. v. Fichtel, 219 Fed. 723, 730, 135 C. C. A. 421; Rauchbach-Goldsmith Co. v. Seward Trunk & Bag Co., 255 Fed. 567, 568, 166 C. C. A. 635; Austin Mfg. Co. v. American Well Works, 121 Fed. 76, 57 C. C. A. 330; Benbow-Brammer Mfg. Co. v. Simpson Mfg. Co. (C. C.) 132 Fed. 614; Benbow-Brammer Mfg. Co. v. Straus, 166 Fed. 114, 116, 92 C. C. A. 98; American Hoist & D. Co. v. Nancy Hanks H. P. & F. Co. (D. C.) 216 Fed. 785; Walker on Patents (5th Ed.) § 353.

In Wilson & Willard Mfg. Co. v. Union Tool Co., 249 Fed. 729, 161 C. C. A. 639, the court had under consideration two complicated machines, each of many features, and the formal changes in the devices were found to affect the principle of operation. All the elements were old in the art. In the structure in the instant case the essential elements are few and simple; not old in the particular art in the patent, although cushions were old in the analogous art of beds in sleeping cars of railroads, and arched longitudinal bars do not appear in either art prior to complainant's invention.

A minor infringement by defendants is shown by the evidence to have occurred upon a three-months automobile trip made by the defendants before they began the manufacture and sale of their device. The automobile bed used by them on this trip cannot be distinguished in any particular, as disclosed by the evidence, from that of the patent in suit. An attempt was made to do so by defendants claiming that, although the pictures of their car taken on this trip show the foot of the bed hooked up to the bows of the automobile top, it was only hooked up in that manner to get it out of the way of the driver.

I am compelled to discredit this statement, because of the use made by the pictures in circularizing their device for sale. One of these pictures, marked "In Use" in this circular, shows an occupant in the bed. As there is also a person seated at the steering wheel, this might not be altogether conclusive, were it not for another picture showing the bed in the same position, marked "Installed," with no one at the steering wheel. I must conclude, from the two pictures and the use made of them in the circular, that the bed was in all things made up as it was intended to be in actual use, and not as it might have been supported when not in use. It is unreasonable that, in using these pictures for circularizing purposes, in order to induce purchases of the bed, they

would have pictured the bed in a form other than as designed for use, when pictures might have been easily taken to show such fact.

It is further contended by defendants that their device is not an infringement, because it may be set up and used in a car without a top, and without supports for a top. While this may be true, technically, the evidence fails to disclose the use of beds in cars without tops, and, in view of the well-known fact that substantially all touring cars are provided with tops, and that extended trips are not made in cars without tops, and that the advantages of a top over the bed under substantially all conditions are manifest, I conclude that a distinction attempted to be drawn on this account is more theoretical than practical. Both reason and experience show that such use is not, and will not be, made of such beds. One of the supports of the top, even in a car with the top down, would still remain; that is, the wind shield and the frame, and, as already pointed out, the top and supports are, by the specifications, disclaimed as part of the invention.

Any other differences in the two devices before the court are in entirely nonessential particulars, and it is not necessary to disclose them. The circumstances might suggest a studied evasion by the defendants of complainant's patent; but, having reached the conclusion indicated, it is not necessary to determine that question.

A decree will be entered against all the defendants.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes